## PUGH *v.* FAIRMOUNT GOLD & SILVER MINING COMPANY & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Argued October 22, 1884.—Decided November 10, 1884.

If holders of notes of a corporation, secured by a mortg  of its realty, agree to convert their notes into stock upon a condition which fails, the right to foreclose the mortgage is not affected by the agreement.

This was a bill filed on November 26, 1875, by Thomas Hare and Jonathan H. Pugh, trustees, to foreclose a mortgage executed to them on August 22, 1870, by the Fairmount Gold and Silver Mining Company, to secure the bond of the company for $17,000. It appears from the record that at the date of the mortgage the mining company was indebted to various persons, who held its promissory notes or certificates of indebtedness, given and bearing date between August 4, 1868, and May 20, 1870, and amounting in the aggregate to $16,387.05, all bearing interest at the rate of six per cent. per annum. To secure the payment of this indebtedness to the holders of the notes, the mining company, on August 22, 1870, executed a bond of that date to Hare and Pugh in the penal sum of $34,000, conditioned for the payment to them at the expiration of one year from date of the sum of $17,000, with interest at the rate of six per cent. per annum, payable half yearly in gold. This bond was secured by the mortgage which the suit was brought to foreclose, bearing the same date, and conveying to Hare and Pugh certain mines, a mill site, mill and machinery in Clear Creek County, Colorado. Contemporaneously with the execution of the bond and mortgage, Hare and Pugh executed a declaration of trust to the effect that they held the bond and mortgage in trust for the benefit of the holders of the notes of the mining company above mentioned, and that if the mining company should pay off the notes the bond and mortgage should be taken as paid and satisfied, and should be cancelled. The bill averred that the bond was due and wholly unpaid, and prayed a foreclosure of the mortgage.

John W. Thackara, Gilbert B. Reed, and others, who, it was alleged, claimed some interest in the mortgaged premises as judgment creditors or otherwise, were made defendants to the bill.

It appeared from the record that the defendant Thackara had been superintendent of the mine and general agent of the mining company in Colorado, and was a stockholder. He held by purchase some of the notes or certificates of indebtedness secured by the mortgage issued to other parties, and held other notes issued subsequent to the mortgage to himself for his salary, &c. Prior to the institution of this suit, to wit on the 22d day of March, 1873, Thackara began suit against the mining company on his notes and a book account, caused a writ of attachment to be issued against the mining company, and on the 13th day of January, 1875, recovered a judgment for $23,442.-12. Upon a sale under execution issued on this judgment, all the real and personal property of the mining company, including that covered by the mortgage, was sold to Thackara for the sum of $24,873.01, and he assigned the certificate of purchase to the defendant Reed, to whom a sheriff's deed was executed December 15, 1875. It was conceded that Reed had succeeded to all the rights and interests of Thackara. The bill was dismissed as to Thackara, and Reed substituted as defendant in his place.

Reed, by his answer, admitted the execution of the mortgage mentioned in the bill to secure the payment of notes made by the mining company, the sum secured by the mortgage not to exceed $17,000. He set up title to the mortgaged premises, claiming under the sheriff's deed executed to him under the sale made to Thackara. He averred that all the notes which had been secured by the bond and mortgage executed to Hare and Pugh, except two held by Samuel Nelson, one for $25 and the other for $150, and one held by W. B. Wharton for $100, had either been transferred to Thackara, and were included in the amount of his judgment against the mining company, or had been converted into stock of the mining company and surrendered, and were thus satisfied. Neither the mining company nor any of the other defendants made any defence to the suit,

and decrees *pro confesso* were taken against them.	The answer of Reed was put in issue by replication.	Upon final hearing on the pleadings and evidence, the Circuit Court dismissed the bill, and the complainant Pugh (Hare having died pending the suit), appealed.

*Mr. John W. Ross* (*Mr. Mills Dean* was with him), for appellant.

*Mr. J. H. McGowan* (*Mr. A. T. Britton* and *Mr. A. B. Browne* were with him) for appellee.

MR. JUSTICE WOODS delivered the opinion of the court.  He . stated the facts in the foregoing language, and continued :

It is clear that the complainant was entitled to a decree of foreclosure unless the grounds of defence alleged by the respondent Reed were well taken.

The first of these was, that the directors of the mining company, who executed the bond and mortgage, did so without authority, and the bond and mortgage were therefore null and void.	It is a sufficient reply to the defence to say that no issue is taken by the answer upon the averment of the bill that the bond and mortgage were executed and delivered by the proper officers of the mining company.	On the contrary, the answer admits that " the said mining company, by its officers, on the date aforesaid, made, executed, and delivered to complainants, as trustees, a certain bond," describing the bond mentioned in the bill, " and that to secure the said sum of seventeen thousand dollars mentioned in said bond, the said Fairmount Gold and Silver Mining Company, by its officers, made the mortgage in said bill mentioned and upon the property in the bill of complaint described to the complainants."	These admissions preclude the defence set up for the first time at the hearing, that the officers were not authorized to execute the bond and mortgage.	The defendant having admitted the execution of the mortgage by the officers of the company, the complainant had the right to rely on the admission, and was not bound to prove it.

The other defence relied on was based on the allegation that the notes which the mortgage was given to secure had been satisfied, except those held by Nelson and Wharton, and these the defendant Reed offered to pay. The facts upon which this defence rests are as follows. On February 8, 1873, the board of directors of the mining company passed the following resolution:

" *Resolved,* That the board of directors authorize the conversion of certain outstanding and unpaid certificates of indebtedness of the Fairmount Gold and Silver Mining Company, being numbered from 1 to 87, both numbers inclusive, and Nos. 89 to 100, both numbers inclusive, into stock of the said company at the par value thereof, upon the surrender of the said certificates of indebtedness by the holders thereof: Provided that the holders of the said certificates of indebtedness convert the same into stock of the said company, at the par value thereof, within ten days from the date of the passage of this resolution, and all the holders convert."

The certificates of indebtedness mentioned in this resolution were the notes which the mortgage was given to secure. It is insisted by the defendant Reed that all the notes of the company, except those held by Thackara, Nelson, and Wharton, were converted into stock under the provisions of the foregoing resolution and were thereby satisfied, and that the notes held by Thackara, being merged in the judgment recovered by him, were satisfied by the sale of the company's property under execution, and as he offers to pay the notes held by Nelson and Wharton, there should be no decree of foreclosure.

The record does not sustain the assumption of the defendant. On the contrary, it appears that there never was any conversion of notes secured by the mortgage into the stock of the company. It was a condition of the resolution passed by the directors, under which the conversion is alleged to have taken place, that none of the notes were to be converted unless all were converted. The purposes of the resolution were plain, namely, to relieve the company of its embarrassments by providing for the conversion of its debts into stock. In order that this might be done and no advantage taken by one cred-

itor over the others, the conversion of notes into stock was to take effect only on the condition that all the creditors consented, and that the conversion was made within ten days. This provision in the resolution was necessary to prevent a part of the creditors, after some had converted their notes into stock, from seizing the property of the company, and applying it to the payment of their own debts, to the exclusion of other creditors. A large part of the creditors surrendered their notes and took stock in their stead. But this conversion was conditional, and the notes so exchanged were not cancelled, because the conditions upon which the conversion was to take place were never complied with.

Other holders of notes, among whom was Thackara, refused to convert their notes into stock; and thus the whole scheme fell through. The defendant Reed, who claims under Thackara, insists that all the creditors who surrendered their notes shall lose their debts, and that the notes held by Thackara shall take the entire property of the company. He thus insists upon a result which the resolution of the directors was cautiously framed to prevent. As soon as the ten days prescribed by this resolution had expired, and it appeared that all the holders of notes secured by the mortgage of the mining company had not converted them into stock, those who had offered to convert were remitted to their rights as creditors of the company. A mortgage creditor, who had refused to convert, could not, by assuming that the property of the company was released from the mortgage, seize it for the satisfaction of his own debt to the exclusion of all the other mortgage creditors. By refusing to convert his notes into stock, he left the notes of the other creditors and the mortgage which secured them, in full force and effect. The contention of a creditor, who did not offer to convert, that the conditional offer of the other holders to convert is, in effect, a conversion, and satisfies their notes, and leaves the property of the company unencumbered and liable to seizure, and applicable exclusively to the satisfaction of his claim, is without support in reason or justice.

It appears from the record that a number of the creditors of the mining company, who had surrendered their notes condi-

tionally, required the complainants, Hare and Pugh, who were the mortgagees, to proceed to enforce the mortgage by suit to foreclose, and in compliance with this demand the present suit was brought.     There is no ground upon which their right to the relief prayed can be denied.

There is no support for the contention of Reed that it was the duty of the holders of notes, who had offered to convert them into stock, to rescind, within a reasonable time, the contract of conversion, and that, by delaying to do so for three years, they had lost the right to rescind.     The answer to this contention is, that there never was any conversion of notes into stock and no binding contract to convert.     The most that can be claimed is, that the holders of the notes secured by the mortgage offered to convert them upon the conditions expressed in the resolution.     The conditions were never complied with. There was, therefore, no conversion and nothing to rescind. The conditional surrender of the notes secured by the mortgage did not cut off the right to foreclose the mortgage for their satisfaction.     *Howe* v. *Lewis*, 14 Pick. 329; *Davis* v. *Maynard*, 9 Mass. 242; *Stover* v. *Woods*, 11 C. E. Greene (26 N. J. Eq.) 417.

The notes which were filed for conversion remained the property of their holders respectively, and the stock the property of the company.     It does not appear that any holder of the notes had disposed of stock which he had received conditionally. If there is such a one he will be compelled to account for the stock.     Those in whose names the stock still remains will be entitled to their notes and to the security for their payment afforded by the mortgage, and the mining company will be entitled to a re-transfer of the stock.

It being clear that the notes held by the parties for whom the present suit to foreclose was brought have not been satisfied, the right of the complainants to maintain the suit is put beyond question.     The sale upon the judgment at law recovered by Thackara could not affect that right.     It has been held by many courts that a mortgagee cannot, upon a judgment recovered for a debt secured by his mortgage, levy the execution upon the mortgaged property.     *Atkins* v. *Sawyer*, 1 Pick. 351; *Washburn* v. *Goodwin*, 17 Pick. 137; *Tice* v. *Annin*, 2 Johns.

Ch. 125; *Camp* v. *Coxe*, 1 Dev. & Bat. (Law), 52; *Waller* v. *Tate*, 4 B. Mon. 529; *Powell* v. *Williams*, 14 Ala. 476; *Carpenter* v. *Bowen*, 42 Mississippi, 28; *Linnville* v. *Bell*, 47 Ind. 547.

But whether this be the established rule or not, it requires no authority to show that a sale of the mortgaged premises, upon a judgment recovered on a part of the notes secured by the mortgage, does not preclude the holder of other notes secured by the same mortgage from proceeding to foreclose it. A sale on such a judgment could only affect the equity of redemption, and would leave the rights of the holder of other notes secured by the mortgage unaffected.

We are of opinion that the Circuit Court erred in dismissing the bill.

*The decree must therefore be reversed, and the cause remanded for such further proceedings in conformity with this opinion as the case may require.*