William P. Bennett, William A. Zahn, Robert Frew, C. W. Bassett, W. C. Connelly, Jr. and J. M. Arnold, Administrator of W. P. Bennett, deceased, Appellants, *v.* E. A. McMillin, J. M. McMillin and the Big Meadows Gas Company, a corporation.

[Marked to be reported.]

*Fraud—Relation of trust—Duty to disclose material facts.*

If a party knows that another is relying upon his judgment and knowledge in contracting with him, although no confidential relation exists, and he does not state material facts within his knowledge, the contract will be avoided; for knowingly to permit another to act as though the action was confidential, and yet not state material facts, is fraudulent.

M. owned an interest with others in oil and gas leases, which he undertook to sell for himself and the other owners, and his brother J., who had no interest in the property at the time, aided him in the project. M. and J. procured an offer from R. to take the property and pay the owners one half the proceeds of sales. M. subsequently prepared an agreement naming his co-owners as assignors of the leases, and himself and his brother as the assignees. In this 'agreement it was set forth that all the parties were associated together as owners of the property, and it was stipulated that M. and J. should take the gas and pay one fourth the net proceeds to all the owners, including themselves, they to retain three fourths. R.'s offer was concealed by M. and J., and J. personally solicited the other owners to sign the agreement, representing that it was the best that could be got. This agreement was not signed, but subsequently a draft of another was prepared embodying substantially the same terms, with the names of the purchasers left blank. This was executed at the solicitation of J., and without any communication by him as to R.'s offer. After its execution M. and J. filled in the blank with their names as purchasers, and on the same day entered into a contract with R. under which

they made large profits. A bill in equity was subsequently filed by the co-owners against M. and J. for an account of the profits. *Held,* that J., by aiding in the fraud by which the profits were made, became liable to an accounting, although he had no interest in the property prior to the execution of the assignment.

Argued Oct. 14, 1896. Appeal, No. 174, Oct. T., 1896, by plaintiffs, from decree of C. P. Lawrence Co., on bill in equity. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Bill in equity for an account. Before Miller, P. J., of the 35th judicial district, specially presiding, and Wallace, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree dismissing bill.

A. Leo. Weil, with him *S. W. Dana, S. D. Long* and *C. M. Thorp,* for appellants.—There must, as between part owners, be the utmost good faith. It is not enough that they do not affirmatively misrepresent; they must not conceal; they must speak and speak fully about every material fact known to them, or the contract will not be allowed to stand: 1 Perry on Trusts, sec. 178; Bispham's Prin. of Eq., sec. 93 ; 1 Bigelow on Fraud, 315; Keech v. Sanford, 1 Leading Cases in Equity, 62.

The relationship of joint owners of property is one of trust and confidence: Tanney v. Tanney, 159 Pa. 277; McCutcheon v. Smith, 173 Pa. 101; Weaver v. Wible, 25 Pa. 270 ; Brown's Est., 2 Pa. 463 ; Lloyd v. Lynch, 28 Pa. 419 ; Gibson v. Winslow, 46 Pa. 380; Duff v. Wilson, 72 Pa. 447 ; Weible's Appeal, 127 Pa. 34; Kramer v. Winslow, 130 Pa. 484; Van Horn v. Fonda, 5 Johns. Ch. 388; Tisdale v. Tisdale, 2 Sneed (Tenn.) 599; King v. Wise, 43 Cal. 633; Barry v. Bennett, 45 Cal. 80; Willink v. Vanderveer, 1 Barb. 599; Hodge v. Twitchell, 33 Minn. 389; Yeoman v. Lasley, 40 Ohio, 190; Jennings v. Rickard, 10 Colo. 395; Delmonico v. Raudebush, 2 McCrary, 18.

Where one party knows that the other places a peculiar trust and confidence in him, or where they occupy a fiduciary relationship, there is usually an obligation to disclose all material facts, and silence or concealment thereof will, in such cases, constitute fraud: 8 Am. & Eng. Ency. of Law, 644; Simons v. Vulcan Oil & Mining Co., 61 Pa. 202.

*J. Norman Martin,* with him *D. B. Kurtz* and *L. T. Kurtz,* for appellees.—It is a well established rule that after a thorough and careful investigation a master's report is entitled to great consideration; every presumption should be made in its favor: Stehman's App., 5 Pa. 413; Riddle's Est., 19 Pa. 431; Bedell's App., 87 Pa. 510; Sproull's App., 71 Pa. 137; Mengas' App., 19 Pa. 221.

In a sworn answer a statement responsive to a direct interrogatory in the bill must be accepted as true until disproved: American Tile Co. v. Garrett, 110 U. S. 228; Lenox v. Prout, 3 Wheat. 520; Com. v. Cullen, 13 Pa. 143; Morgan v. Tipton, 3 McLean, 350.

Plaintiffs offered no evidence to overcome the answer. The responsive denial of the answer was not overcome by two witnesses, or by evidence equivalent thereto. The declaration of trust was disproved: Lehigh Valley R. R. v. Mellon, 104 U. S. 112; Pusey v. Wright, 31 Pa. 387; Rowley's App., 115 Pa. 150; Lindley on Partnership, 52; Dunham v. Loverock, 158 Pa. 197; Grubb's App., 66 Pa. 117; Butler Bank v. Osborne, 159 Pa. 10; Taylor v. Fried, 161 Pa. 53.

There is no duty on one tenant in common to reveal to or advise his cotenants as to the value of property. He has the right to keep his business to himself: Neill v. Shamburg, 158 Pa. 263.

In order that equity will interfere plaintiff must establish the fact that a misrepresentation was made, and that it was a matter of substance, and has actually misled him. If plaintiff was not misled, or if it was in a matter in regard to which neither could be presumed to trust each other, there is no reason for equity to interfere or grant relief on the ground of fraud: Brightley's Eq. Jur., sec. 58; 1 Story's Eq., sec. 191.

When means of knowledge is equally accessible to both parties each must judge for himself. If the vendee know of a mine under land he is not bound to disclose it, unless inquiry be made: Brightley's Eq. Jur., sec. 64; 1 Story's Eq., sec. 210; Laidlaw v. Organ, 2 Wheaton, 178; Kintzing v. McElrath, 5 Pa. 467; Rockafellow v. Baker, 41 Pa. 321; Myers v. Drake, 10 Watts, 110; Bentz v. Rockey, 69 Pa. 71.

A written instrument will not be reformed, set aside, or made inoperative on the ground of fraud, unless the evidence of the

fraud is clear, precise and indubitable: English's App., 119 Pa. 533; Clark v. Everhart, 63 Pa. 347; Graham v. Pancoast, 30 Pa. 89; Geddes's App., 80 Pa. 442.

Concealment is no fraud unless disclosure be a duty, and that only exists where the party concealing stands in a fiduciary or trust relation, and where his knowledge is acquired in such capacity, and in the right of the other party: Chorpenning's App., 32 Pa. 315; Beeson v. Beeson, 9 Pa. 279; Hazlett v. Powell, 30 Pa. 293.

Unless there is in the transaction more than is implied from a mere violation of a parol agreement, equity will not decree a purchaser to be a trustee: Kisler v. Kisler, 2 Watts, 327; Robertson v. Robertson, 9 Watts, 42; Kistler's App., 73 Pa. 398; Porter v. Mayfield, 21 Pa. 263.

The evidence to establish a resulting trust, especially one arising ex maleficio, which is an imputation of fraud, should be clear, explicit and unequivocal: Martin v. Baird, 175 Pa. 540; Kimmel v. Smith, 117 Pa. 183; Barry v. Hill & Gillespie, 166 Pa. 344; Martin v. Berens, 67 Pa. 459; Rowand v. Finney, 96 Pa. 192; Dyer's App., 107 Pa. 446.

OPINION BY MR. JUSTICE DEAN, January 4, 1897:

On April 22, 1891, through negotiations conducted by E. A. McMillin, he and William Smith took by assignment from Thomas A. Book, nineteen oil and gas leases in Lawrence county. The written assignment was to Smith, he to hold the same in trust, as follows: One eleventh of three fourths for McMillin, and ten elevenths of three fourths for such persons as should contribute towards the common enterprise and the cost of drilling two wells for the development of the common property for oil. Smith resided in Pittsburg, and McMillin in New Castle, the last named not far from the territory to be developed. It was alleged by plaintiffs that McMillin got his brother, J. M. McMillin of New Castle to join in the project. Smith induced a number of his friends in Pittsburg to join as contributors, they to share in the profits in proportion to their contributions. From the money two wells were drilled, which developed as good gas producers, but no oil was struck. At the time he made the assignment to Smith, Book had reserved one fourth the oil or gas to be developed, which was afterwards

purchased by E. A. McMillin, plaintiffs alleged, for himself and brother. As to the three fourths in name of Smith he made a written declaration that he held the same in trust for himself, the McMillins, and the other contributors. The production of the wells indicated the property was valuable for gas purposes, and efforts were made by the parties to sell it at a profit. A committee of which E. A. McMillin was one, was appointed to bring the property to notice of purchasers and conduct negotiations for a sale. Meetings were held in Pittsburg, two of them at least attended by both the McMillins, and others by E. A. McMillin alone. In January, 1893, both the brothers opened negotiations with O. C. Redic for purpose of selling the property to him. They discovered from him, in their conversations, that the salt water which was obstructing production in one of the wells, could be shut off at a small expense, and this would add largely to the value of the property. Full examination of the property by Redic resulted in an offer from him to take the gas, pipe it at his own expense to New Castle, sell it and pay to the owners one half the gross proceeds of sales. Immediately after securing this offer E. A. McMillin, on January 17, 1893, wrote to W. A. Zahn, one of his co-owners, and one of these plaintiffs, at Pittsburg, asking him if he could get the consent of the contributors to take one fourth the net earnings, and pay one fourth the cost of drilling new wells. In this letter he concealed from his co-owner Zahn, Redic's offer of one half the gross proceeds of sales. Zahn replied that he thought he could get such consent. E. A. then went to Pittsburg with a contract drawn, naming the Pittsburg parties as the assignors and the two McMillins as the assignees. In this agreement it was set forth, that all the parties were associated together as owners of the property, and it was stipulated the McMillins were to take the gas, pipe it to New Castle, and pay one fourth the net proceeds to all the owners, including themselves, they to retain three fourths. The Pittsburg parties were urged to immediately execute the contract; but as one or more of them desired to consult counsel, its execution was deferred. They finally prepared another draft of a contract, embodying substantially the same terms, with the name of the purchasers left blank. This was executed January 31, 1893. As to this contract it is not disputed J. M. McMillin

solicited plaintiffs to affix their signatures.  No disclosure of
the Redic offer was made to the Pittsburg parties when they
signed.  After signature, the McMillins filled in the blank
with their names as purchasers, and the same day contracted
with Redic according to the terms of his proposition already
noticed.  He piped the gas to New Castle, and paid the McMil-
lins one half the gross proceeds of sales.  About a year after-
wards plaintiffs discovered the facts, and filed this bill against
both the McMillins for an account, averring them to be joint
owners or tenants in common with them of the leaseholds, and
that a fraud had been practiced upon them in obtaining the
contract of January 31, 1893.  The defendants made answer,
denying all the material averments of plaintiffs' bill.  J. M.
McMillin especially denied having any interest in common
with plaintiffs and his brother prior to the execution of the
contract of January 31, 1893.  The court below, after full
hearing, dismissed the bill, and from that decree we have this
appeal by plaintiffs.  The principal errors alleged are the find-
ing of fact, that J. M. McMillin was not interested in the orig-
inal project, and conclusions of the court that he was not liable
to account on the facts, even if his interest commenced at the
date of the second purchase.

The court does not seem to question that on the evidence
the bill could have been maintained if filed against E. A. Mc-
Millin alone, but being against the brothers jointly, and not
sustained as to J. M. McMillin, it must be dismissed.  The
learned court below in its opinion, speaks as follows :

" There are two main questions of fact upon which plaintiffs'
claim for relief must ultimately rest : first, that J. M. McMillin
had an interest in the leases mentioned in plaintiffs' bill, and
was a tenant in common with plaintiffs in said leases on Jan-
uary 31, 1893 ; second, fraud, actual or constructive, on the
part of the defendants in procuring from plaintiffs the contract
exhibit 'A.'  If either of these grounds fails, the case must fall.
. . . . An examination of the whole evidence fails to show the
relationship of tenant in common between the plaintiffs and
J. M. McMillin.  We would hesitate to find such a relationship
from the evidence of the plaintiffs if it was not contradicted.
Both J. M. McMillin and E. A. McMillin, however, positively
deny such relationship in their answer, and also upon the stand

as witnesses, and their cross-examination by plaintiffs' counsel does not in the least weaken their evidence.

" The plaintiffs also contend that even if J. M. McMillin was not a cotenant he occupied such a fiduciary relation toward them which required him to disclose the offer which Redic had made prior to January 31, 1893, and which offer was concluded in the contract of February 1, 1893. They urge that he had so conducted himself as to lead the plaintiffs to believe he was acting with them and for them. They also urge that he misrepresented the facts by stating that the terms of the contract he was obtaining from them were the best that could be obtained for the property.

" We have already found that J. M. McMillin was not a cotenant with the plaintiffs and E. A. McMillin. We find nothing in the evidence which should have induced the plaintiffs to believe that he was a cotenant, or that he was acting in any fiduciary capacity for them or with them. It is true that he was present at two meetings of the parties in Pittsburg, but there was no evidence to show that he took any part in the proceedings, or acted other than as a spectator. The value of the property was purely speculative, and the plaintiffs had the same opportunity to form an opinion as to its prospective value as J. M. McMillin. It is true Redic had proposed to him to lease the premises on more favorable terms than the plaintiffs were to get by their contract, but there was no such fiduciary relation subsisting between J. M. McMillin and them as required him to disclose Redic's offer."

Whether a tenant in common or merely a partner in a project for gain, E. A. McMillin, on the undisputed facts, by reason of his confidential relation with his cocontributors to the common enterprise, perpetrated upon them a palpable fraud,— not a constructive fraud merely, but an actual fraud. If the brother aided and abetted him in consummating this fraud that they two might reap the fruits of it, and they have succeeded, they are jointly bound to make restitution.

On sufficient evidence the court below has found that J. M. McMillin had no interest in the purchase from Book, April 22, 1891 ; there was much evidence to the contrary, but the error is not so clearly manifest in the finding as to move us to disturb it. Therefore, we assume as a fact his property interest dated

from the contract of January 31, 1893. It is not denied, nor could it be, in the face of the evidence, that by that contract, J. M. shares in the fruits of the fraud to which E. A. was an active party, and for which he is answerable in an account. But did J. M. by his declarations and conduct aid his brother in procuring the fraudulent contract so as to render him accountable in equity to these plaintiffs? The learned court below thinks not, because he was not one of the contributors to the first enterprise, and therefore must be treated as a stranger dealing at arm's length with the copartners or cotenants of his brother. This is a mistake, for that one fact warrants no such conclusion. If he had been a member of the first association, and had untruthfully represented a material fact to his associates to induce them to part with their interests, that would have been conclusive against him, because of the legal presumption of a confidential relation; but if there was not presumptively a confidential relation, still, was there one in fact, or such relation as warranted them in relying on the truthfulness of his statements? The principle controlling such cases, and deducible from all the authorities, is well stated by Perry on Trusts, vol. 1, p. 179:

"There are cases where a party must not be silent upon a material fact within his knowledge, although he stands in no relation of trust and confidence . . . . If a party knows that another is relying upon his judgment and knowledge in contracting with him, although no confidential relation exists, and he does not state material facts within his knowledge, the contract will be avoided; for knowingly to permit another to act as though the action was confidential, and yet not state material facts, is fraudulent. It is said that a party in such circumstances is bound to destroy the confidence reposed in him, or to state all the facts that such confidence demands."

The court's twelfth finding of fact is, that at the time the contract was entered into, J. M. represented to the Pittsburg parties the terms one fourth the oil as embodied in the contract he was soliciting them to sign were the best that could be got; this representation was wilfully false; he admits that Redic had made an offer of double that price, which had been accepted by him and his brother, on which a contract had been framed, which he had in his pocket ready to be signed as soon as the

Pittsburg parties signed the contract for one fourth.  In whose interest was he acting when this falsehood was uttered? It is argued his own expectant interest in the contract with the Pittsburg parties. But he was also dealing as the agent of his brother; they two were the purchasers, parties of the second part to the contract which inured to the benefit of both; he was there to conduct the negotiations and close the contract in pursuance of his brother's letter to Zahn of ten days previous, which did not hint at Redic's offer. There can be no severance of the falsehood by imputing one half of it to E. A., who held a legal confidential relation, and the other half to J. M. who, if representing himself alone, did not hold the same relation. By taking his brother's place, and representing him, he spoke for both, and put himself in a position where the brother's cotenants were justified in relying on this false statement of a most material fact; this gave him a vantage ground, which naturally invited confidence in his statements, and he must be held to the same rule of conduct as E. A. would have been held to, had he, on the same representation, personally solicited the assent of his copartners to a sale at half price. " It is naught, it is naught, saith the buyer; but when he is gone his way he boasteth himself." This is the attitude of a stranger toward the seller whose wares he depreciates, and the one the court below finds J. M. to have held.; it is not the one the facts put him in. To hold J. M. answerable it is not essential that another case exactly like this on the facts should have been decided fraudulent; this clearly is within the scope of established principles, where in equity a party dare not falsely represent a material fact. " Courts have never laid down as a general proposition what (facts) shall constitute fraud, or any rule beyond which they will not go, lest other means of avoiding equity will be found:" 2 Parsons on Contracts, 769. And they certainly have never held that where a party aiding in a fraud has not theretofore acquired a fractional interest in the property which is the subject of the fraudulent bargain, he cannot be called to an accounting.

But if he had no direct interest of his own, the misrepresentation went still further than as a representative of his brother; for the very agreement he had asked them to sign says: " Whereas the said parties of the first part and of the second

part are associated together as owners of leases for oil and gas purposes, on one thousand acres of land in Shenango and Slippery Rock township, Lawrence county, . . . . the said first parties owning one hundred and twenty shares, and the said second parties owning fifty-six shares.    And whereas two wells have been drilled at the joint expense of all of said owners, . . . . and whereas all of said owners are desirous of having said gas used . . . . so as to realize a profit . . . ." True this was not the agreement signed three days thereafter, but it was one E. A. McMillin had, acting for both, asked them to sign. E. A. was then acting for J. M. in efforts to secure a contract in which both concurred, and which was framed with a view to accepting the Redic proposition, and was therefore a false representation by both.    It was not signed, only because the Pittsburg parties desired their own counsel to frame it.    The one adopted by the two brothers, and first exhibited to the Pittsburg parties, contained a deliberate declaration in writing that J. M. McMillin was then a copartner.    This was a direct invitation to the copartners to deal with them in securing the best price.    The conduct of J. M., for months before and during all the negotiations, seems to us on this printed testimony reconcilable only with the theory that he was interested in the leases at the date of the contract with the Pittsburg parties.    Assuming, however, that when he said on the witness stand he was not interested he told the truth, he did not tell the truth to the confidants and partners of his brother when he contracted for himself and his brother at half price for their interests; the law cannot undertake to draw a line between his misrepresentation as agent for E. A. and his misrepresentation in his own interest as a stranger to the original association.    And if his declarations and conduct misled, as they plainly did, the Pittsburg parties, and induced them to believe him interested with them in a common enterprise, he is estopped now from denying the truth of the representations.    On both grounds the bill is sustained as against him, and both should account to plaintiffs as prayed for in the bill.

As to the remark of the court, that when the contract was made the value of the property was purely speculative, and all parties had the same opportunity for forming an opinion, it is certainly an error.    The court must have overlooked the fact

that J. M. McMillin had in his pocket, at the very time he was soliciting the signatures of the plaintiffs, the draft of the proposed agreement with Redic, which was to be signed as soon as the Pittsburg parties had executed their contract, and which was afterwards on the same day actually executed by Redic. As concerned the McMillins, there was nothing speculative in their estimate of value; they knew exactly the worth of the property, by knowing what they were to get for it; their profit depended only on how low they could beat down the price by methods which some dealers call only shrewd, but which the law pronounces fraudulent, and holds the parties to a strict accountability.

It is ordered that the decree of the common pleas be reversed and plaintiffs' bill be reinstated, and further:

1. That the said E. A. McMillin and J. M. McMillin were trustees ex maleficio for all the owners of said leaseholds in making said contract with Oliver C. Redic, and that said contract and all the rights of the first parties thereunder are the property of all the present owners of said leaseholds, to whom, through their treasurer, all payments under the same should be made.

2. That the said E. A. McMillin and J. M. McMillin account to the orators for, and pay over to the said treasurer, all moneys received by them under said contract with Oliver C. Redic.

3. That an injunction issue restraining the said E. A. and J. M. McMillin from selling, assigning, incumbering or in any manner disposing of said last mentioned contract.

4. That an injunction issue restraining the Big Meadow Gas Company from paying any further sum or sums of money to the said E. A. and J. M. McMillin under said last mentioned contract.

It is further ordered that defendants pay the costs.