### George H. Craft

*v.*

### Philip Schlag et al.

[Filed May 20th, 1901.]

1. Admissions of fact contained in an unsworn answer of a defendant may be used by the complainant as evidence.

2. Statements in an answer not under oath for the interest of the answering defendant cannot be considered as evidence for such defendant.

3. The mere liability of a surety to pay his principal's debt cannot, as against the principal's existing creditors, be deemed a valid consideration for the absolute conveyance by the principal of substantially all his property to the surety.

4. A surety, or one under an undischarged liability for another, may take a mortgage upon any or all the principal's property for the purpose of securing the surety against loss on his liability. Such a taking of security does not hinder other creditors of the principal from collecting their claims, in the sense prohibited by the statute of frauds.

5. An absolute conveyance, whereby the title to substantially all the principal's property is transferred to a surety (who has not satisfied his liability), for a named valuable consideration, which was not in fact paid, is a hindrance to the existing creditors of the grantor principal and is obnoxious to the statute of frauds.

On bill, answers and proofs.

On April 14th, 1899, the complainant recovered a judgment, before a justice of the peace of Gloucester county, for $183.15, damages and costs, against the defendant Philip Schlag. This judgment was docketed in Gloucester county common pleas on the 18th day of April, 1899. In the following May Schlag appealed from this judgment to the court of common pleas. On September 16th, 1899, Schlag conveyed three tracts of land in Gloucester county to the defendant Frank B. Ridgway, for the named consideration of $1,500. On the 19th of September, 1899, this deed was recorded in the Gloucester county clerk's

office.  On June 29th, 1900, the appeal was heard and a new judgment was rendered therein in favor of the complainant and against Schlag for $168.59, damages and costs.  The complainant files his bill, setting up the above-named facts and charging that the conveyance from Schlag to Ridgway was without adequate consideration, and upon an agreement between them that the property conveyed should be used to pay certain debts of Schlag and to return the surplus to him, and that the conveyance was made to hinder and defraud the complainant in the collection of his claim against Schlag.  The complainant prays that the defendant may discover what was the consideration of the deed from Ridgway to Schlag, and that the lands conveyed to Ridgway may be decreed to be Schlag's property, notwithstanding the deed, or that Ridgway may be decreed to hold the lands conveyed in trust for the complainant, the creditor of Schlag, and that they may be sold upon an execution issued under the judgment of the complainant recovered and entered on appeal, or by the decree of this court in this cause, and that out of the proceeds of such sale complainant may be paid the sum of his judgment, with interest and costs, with a general prayer for other and further relief.

The defendants Ridgway and Schlag file separate answers, but by the same solicitor.  They admit the judgment before the justice of the peace, the appeal and the new recovery for the lesser sum in the court of common pleas.  They deny that there was no adequate consideration for the conveyance to Ridgway, and that there was any agreement between Ridgway and Schlag that the property conveyed should be used to pay certain of Schlag's debts and return the surplus to him.  They deny that the conveyance to Ridgway was made for the purpose of hindering the complainant or other creditors of Schlag in the collection of debts which Schlag might owe them.

Both defendants, in their answers, go beyond mere denial of inadequacy of consideration, and state, in response to the charges of the bill, what they claim to have been the actual consideration of the deed to Ridgway.  They say that, in 1895, Schlag, as administrator of one Jane S. Sheets, had given bond for $5,000 for the faithful performance of his duties; that

Ridgway, with two other persons, became sureties on that bond. The defendant Ridgway states, in his answer, that he "continued to be, and still is, liable on said bond;" that the other sureties on the bond had become insolvent and worthless, and that the whole responsibility had fallen upon Ridgway, and had been assumed by him prior to the making of the deed; that Schlag, as administrator, had become indebted to the Sheets' estate in a large sum of money ($2,000 or more), which the defendant Ridgway would have to pay, as Schlag had no estate of his own, other than the properties named in the bill of complaint and the equity in another small property not conveyed to Ridgway.

The answer of the defendant Ridgway alleges that, by an order of the orphans court of Gloucester county, Schlag was discharged of all liability as administrator, except the accounting of the property of the estate which had not been accounted for and the paying over to his successor the securities and properties of the estate; that, in pursuance of an order of the court, made June 28th, 1900, Schlag filed his final account, which was approved, whereby it appeared that there was due to him from Schlag, as administrator to the Sheets' estate, the sum of $2,332.84, for which amount the defendant Ridgway says he became, and was, liable on the bond of Schlag as administrator. The defendant Ridgway further answers that Schlag, knowing that the real estate named in the bill of complaint mentioned would not produce sufficient money to liquidate the amount for which he (Ridgway) was liable upon the bond, proposed to him to convey the properties named in the bill, further stating that if the property conveyed was insufficient to save him harmless, that he (Schlag) would pay the deficiency as soon as he was able to do so. The defendant Ridgway further states, in his answer, that, realizing that this was the only chance he had to save himself from complete loss, he agreed to take the conveyance, which, he says, was made unconditionally and absolutely, the only agreement being that Ridgway should take the proceeds arising from the sale of the property to reimburse himself for the losses which he would necessarily incur because he had become surety on Schlag's administrator bond, and that the latter

would, when he was able, pay to Ridgway any deficiency. The
defendant Ridgway denies that the property will produce an
amount sufficient to pay the sum owing by Schlag to the estate
for which he (Ridgway) was liable, and which he must pay.
The defendant Ridgway further denies that the conveyance was
made for the purpose of hindering the complainant in the collec-
tion of his debts against Schlag.

*Mr. Samuel H. Richards,* for the complainant.

*Mr. Robert S. Clymer,* for the defendants.

GREY, V. C.

The statements of the consideration of the deed from Schlag
to Ridgway, made by these defendants in their answers, are ad-
missions as to facts within their knowledge put in issue by
the charges in the bill, and though answers are invited without
oath and are not sworn to, the facts admitted are conclusive
against the defendants who state them in their answers. *Hyer*
v. *Little, 5 C. E. Gr. 445.* Though unavailable collaterally, such
admissions may be useful to the complainant in the pending
cause. *Manley* v. *Mickle, 10 Dick. Ch. Rep. 567 (Court of
Appeals).* The decisions of this state abundantly recognize the
evidential force of an answer as an admission in favor of a com-
plainant. *Ibid.,* and cases there cited.

The proofs taken at the hearing are quite meager in their
disclosures of the facts of the transaction, but, when coupled
with the admissions contained in the defendants' answers, the
case presents this condition of facts: The defendant Schlag was
indebted to the complainant, whose claim was in a pending suit,
which came to judgment in a justice's court against Schlag,
and was docketed in the common pleas. An appeal was taken
and, pending the appeal, Schlag conveyed the lands named in
the bill of complaint (being all he possessed, save an equity of
trifling value) to Ridgway. The latter, in his answer, states
the consideration of this deed. It appears that Ridgway was
a surety on Schlag's bond as administrator, and was liable to
be obliged to make good a balance decreed to be due from Schlag

Craft v. Schlag.

to the distributees of the estate of which he was administrator. There is no claim that Ridgway paid the money for which he was liable; on the contrary, his answer admits that he is yet liable for it, but to secure Ridgway against loss Schlag made the deed and Ridgway accepted it. Both insist that the conveyance was absolute, and that the value of the property conveyed is less than the amount for which Ridgway is liable, but both agree that Ridgway has paid nothing, and that the terms of the conveyance were that Schlag should, whenever financially able, pay to Ridgway such additional sum as the property may fail to discharge.

Examining the transaction in the aspect insisted upon by defendants as an absolute deed, it is admitted that the only consideration for it was Ridgway's liability as surety on Schlag's bond as administrator of the Sheets' estate. Neither Ridgway nor Schlag has, in any way, changed his position to this liability because of the deed. Before the deed was made to Ridgway, Schlag was liable for the whole debt owing to the Sheets' estate. He still remains so liable. Ridgway was Schlag's surety on that liability. He still remains surety, and has not fulfilled his contract by satisfying the debt for which he is surety. He may never satisfy it. If he should meet with financial reverses before he pays the Sheets' debt, all his property, including that conveyed to him by Schlag (if this be held to be an absolute conveyance), may be swept from him, and that debt may never be paid by him. The deed to Ridgway was not a conveyance in consideration of a previously owed debt. Schlag owed, and will owe, nothing to Ridgway respecting the Sheets' estate until Ridgway shall have actually paid the money due that estate.

Passing upon the transaction as an absolute conveyance, the deed to Ridgway was without consideration. It is, therefore, of no significance whether the property conveyed was adequately valued or not. Nothing was, in fact, paid for it. A debtor may not, as against his creditors, give his property away without a consideration, whether it be of great or of little value.

The docketing of the first judgment was notice to Ridgway, when he subsequently took his deed, of the complainant's claim against Schlag. The subsequent setting aside of that judgment,

in rendering the new one, did, by operation of law, discharge the land from lien, but it did not take from Ridgway the knowledge, which he previously had, of the existence of complainant's claim. Ridgway himself, in his answer, shows that, when he took his deed, he knew that Schlag was in financial distress. He justifies his taking that deed for that very reason. He says that he (Ridgway) "was the only person who signed the Sheets' bond who possessed any financial responsibility." Schlag was one of the signers, and Ridgway therefore asserts that Schlag had no financial responsibility when the deed was made. Ridgway further answers that, "realizing it was the only chance he had to save himself from complete loss," he consented to take the deed.

It is not, however, in a case of this kind, where no consideration for the conveyance passes, essential to the complainant's success that he prove that his debtor's voluntary donee knew, when he accepted the gift, that there were unpaid claims against the debtor. When a debtor gives all his property away, it is no answer as against a creditor then holding a claim, who invokes the protection of the statute of frauds against such a gift, for the debtor's voluntary donee to say: "I have received your debtor's property as a gift, but when I took it I did not know he owed any debts."

The defendants claim, in their answers, that the property conveyed is not equal in value to the amount which the defendant Ridgway is obligated to pay on his liability on the Sheets' bond, and that the sale was unconditional and absolute. The answers not being under oath, the allegations therein contained have no evidential effect, and are mere declarations made by the defendants in their own interest. The defendant Ridgway, who knew the whole matter, did not go on the stand to prove these assertions. His omission to do so was made the basis of an argument by the complainant against the good faith of the defence. The allegations stand unproved and cannot be considered. In view of the entirely voluntary character of the conveyance, they would have been no defence if proven.

The transaction between Schlag and Ridgway, if the latter did not wish to pay the Sheets' bond, should have been a mort-

gage, given upon Schlag's property to indemnify Ridgway from the possibility of loss because of his obligation upon that bond. This would have secured Ridgway a prior lien on Schlag's property, in case he should afterwards pay Schlag's debt, to the extent of his payment. It would not have hindered or interfered with Schlag's creditors in applying the residue of his estate in payment of their claims. The taking of an absolute deed conveying all of Schlag's property which had any value, expressing a substantial consideration, which was, in fact, never paid, was an interposition of a hindrance which manifestly prevented Schlag's creditors from collecting, by due course of law, his debts owing to them. It is because of this condition that this suit in equity is brought.

The defendants, although their answers admit a situation which shows the invalidity of the defence, have all through this litigation and in final argument insisted that the deed to Ridgway must be recognized as an absolute conveyance; that only such fraud as involves moral turpitude can deprive that deed of that effect. I am unable to accept this view. The case appears, in some of its essential features, to be similar to *Moore* v. *Roe, 8 Stew. Eq. 90,* though it differs in the fact that in that case there was an actually existing previous debt, which was set up as the consideration for the conveyance of all the debtor's property at an insufficient valuation. In the present case there was neither value given to the grantor, nor any existing debt, owing by him to his grantees, which was, either in whole or in part, satisfied as the consideration for the conveyance.

The deed to the defendant Ridgway has been shown to have been intended to hinder the collection of Schlag's debts, and must be declared to be void, under the statute of frauds. The property conveyed should be sold to pay the complainant's judgment, interest and costs.

I will advise such a decree.