**HAMMETT v. RUBY LEE MINAR, Inc., et al.**

No. 5091.

Court of Appeals of District of Columbia.

Argued April 15, 1931.

Decided June 29, 1931.

Petition for Rehearing Denied Oct. 31, 1931.

GRONER, Associate Justice, dissenting.

See, also, 60 App. D. C. 291, 53 F.(2d) 149.

Julius I. Peyser and Milton Strasburger, both of Washington, D. C., for appellant.

John S. Barbour, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity praying rescission of three contracts for the sale of lands in the state of Virginia, with the return of certain moneys and promissory notes passed in connection therewith.

The plaintiff below, appellant here, is a widow resident in the District of Columbia; the defendant, Ruby Lee Minar, is a resident of Virginia, doing business there and in the District of Columbia, both individually and as president of the defendant company, Ruby Lee Minar, Inc.

The defendants are engaged in the development, sale, and brokerage of real estate, with offices in Washington and in Virginia.

On January 17, 1928, a saleswoman employed by the defendants showed to the plaintiff three lots in Lee Heights, Arlington county, Va., and interested her in the purchase thereof to the extent that she made a tentative deposit on the purchase price, but declined to close any transaction until

she had the personal advice of Mrs. Minar, whom she had known for five years, by whom she had been employed for a short time, and in whom she placed confidence.

On January 19th, the saleswoman tendered to the plaintiff for signature two contracts for the purchase of two of these lots, but the plaintiff declined to go forward in the matter without the personal advice of Mrs. Minar.

On January 21st, plaintiff called on Mrs. Minar at her office in Washington; asked her judgment and advice on the proposed purchases; which was given by Mrs. Minar and followed by the plaintiff.

As a result of this interview, the plaintiff agreed to buy two of the lots in Lee Heights which belonged to one Deming, and which had been shown her by the saleswoman, and also a third lot belonging to the Minar Company, in Greenway Downs, another subdivision, in another county, which the plaintiff had never seen.

The agreed purchase price for the three lots was $8,400 in round figures, of which $3,000 was to be paid in cash, and the remainder by promissory notes payable in small monthly installments over long periods.

The contract for the sale of the Minar lot was drawn then and there by Mrs. Minar upon a printed form; executed by her and by the plaintiff; the entire cash payment of $1,000 was then made; and the note for the deferred payment of $1,398 was then delivered to Mrs. Minar.

On January 23d, contracts for the sale of the two lots in Lee Heights for $3,000 each were executed, $1,000 being paid in cash upon each lot, and promissory notes for the deferred payments delivered.

These contracts provide for a series of installment payments on the notes, covering some eight or ten years, with right of acceleration in the purchaser, and, upon full payment of the purchase price, with interest and other charges, the vendor agrees to execute a deed to the purchaser.

Each contract contains the following provision: "The essence of this agreement is that the deferred monthly payments shall be fully and promptly paid as herein agreed, and upon a failure to meet any payment for thirty days after the same shall be payable, then this agreement shall, at the option of the party of the first part be void, and all moneys paid to him by the party, of the second part shall be considered as liquidated damages and not as penalty, and may be retained by the party of the first part. A waiver by the party of the first part of the condition of this paragraph upon default in one installment shall not be construed as a waiver by him of the condition should there be default thereafter in other installments."

From the memorandum opinion of the trial judge, the cause seems to have been presented to him in a somewhat differing aspect from its presentation here, or at least with emphasis differently placed.

For the bill of complaint does not set forth the facts which we regard as controlling the controversy, but they are set up in the sworn answers of the defendants, and corroborated by the testimony of Mrs. Minar and Mr. Deming.

An answer in equity stating material facts which should have been stated in the bill, but which were omitted, waives the right to object to the omission. Cavender v. Cavender, 114 U. S. 464, 5 S. Ct. 955, 29 L. Ed. 212.

All admissions in the answer can be used as evidence against the defendant. Pugh v. Mining Co., 112 U. S. 238, 5 S. Ct. 131, 28 L. Ed. 684; Craft v. Schlag, 61 N. J. Eq. 567, 49 A. 431; Manley v. Mickle, 55 N. J. Eq. 563, 37 A. 738; Fletcher on Equity Pldg., page 564, § 640.

Or, as Greenleaf expresses the rule, "If the defendant answer that he believes or is informed and believes that the fact is so, this will be deemed a sufficient admission of the fact, unless this statement is coupled with some qualifying clause, tending to the contrary, the general rule in equity on this point being that what the defendant believes the court will believe." Greenleaf on Evidence, page 294, § 282 (15th Ed.).

An appeal to a Court of Appeals opens both facts and law, and therefore raises questions of law in any way that may be deemed proper. Duryea Power Co. v. Sternbergh, 218 U. S. 299, 31 S. Ct. 25, 54 L. Ed. 1047; Ridings v. Johnson, 128 U. S. 218, 9 S. Ct. 72, 32 L. Ed. 401; Linde Air Products Co. v. Morse Dry Dock & Repair Co. (C. C. A.) 246 F. 834.

Upon a prayer for general relief, the court will give the relief to which the plaintiff is entitled under the principles of equity. English v. Foxall, 2 Pet. 595, 7 L. Ed. 531; Jones v. Van Doren, 130 U. S. 692, 9 S. Ct. 685, 32 L. Ed. 1077; Bank of Washington

146

v. Arthur, 3 Grat. (44 Va.) 173; Hollister v. Lefevre, 35 Conn. 456; Hall v. Pierce, 4 W. Va. 107.

▮ Upon the foregoing facts, so brought into the record, we are of opinion that Mrs. Minar assumed a fiduciary relation to Mrs. Hammett which she might well have declined, but which, once assumed, made her printed deeds as inapplicable to the situation as caveat emptor.

Thereafter the parties could no longer deal as strangers at arm's length, and a transaction which might have been unimpeachable in other circumstances, or between parties otherwise placed, became subject to rescission in a court of equity.

"When one of the parties to a contract or business transaction occupies a confidential or fiduciary relation towards the other, they do not deal at arms length, nor are they required to be on their guard against each other for the prevention of fraud. On the contrary the person in the subordinate or dependent position has the right to rely implicitly upon the integrity and good faith of the other, and upon the information and advice which he may give him, while the party in the superior position is bound to exercise the utmost good faith, to state the truth in all that he says, to disclose all material information, and to refrain from taking any personal advantage of the influence he possesses. So that if any contract or dealing between them results in an unfair or inequitable advantage to the dominant party, it will be set aside in equity without proof of fraud, or sinister purpose on his part, and notwithstanding the injured party might have protected himself if he had been on the alert, and had used care and prudence." Black, Rescission of Contracts, § 40.

"The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand towards each other. * * * In this conflict of interest, the law wisely interposes. It acts not on the possibility, that, in some cases, the sense of duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty." Michoud

v. Girod, 4 How. at page 555, 11 L. Ed. 1076.

Or, as Lord Eldon puts it, "The language of a court of justice has in all times been that if a man does not choose to act upon the confidence appearing in the course of the transaction to be reposed in him, he ought to reject it as soon as proposed." Huguenin v. Basely, 14 Vesey at page 294.

"No part of the jurisdiction of equity is more useful than its control of transactions of persons standing in confidential relations, and it cannot be too freely employed, either as to the persons between whom or the circumstances in which it is applied. It is founded upon the principle of correcting abuses of confidence, whatever may be the nature of the confidence reposed or the relation between the parties. The principle is of remedial application and the cases in which it has been commonly exercised—Guardian and Ward—Trustee and cestui que trust—Attorney and Client—are merely instances of its application." Bellage v. Souther, 9 Hare, 534.

"Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new instances might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it may be moral, social, domestic, or merely personal." Pomeroy, Equity Jurisprudence, § 956.

Wherever a fiduciary relation exists, legal or actual, whereby confidence is reposed and the trust abused, courts of equity will grant relief through considerations of public policy and without proof of actual fraud. Highberger v. Stiffler, 21 Md. 352, 83 Am. Dec. 593; Todd v. Grove, 33 Md. 194; Reck's Ex'r v. Reck, 110 Md. 497, 73 A. 144; Mackall v. Mackall, 3 Mackey, 286.

"There are, also, cases where a party must not be silent upon a material fact within his knowledge, although he stands in no relation of trust and confidence. He cannot himself contract at arms length, and permit the other party to act as though the relation was one of trust and confidence." Perry on Trusts, § 179; Bennett v. McMillin, 179 Pa. 146, 36 A. 188, 57 Am. St. Rep. 591; Minor v. Sharon, 112 Mass. 477, 17 Am. Rep. 122; Paddock v. Strobridge, 29

Vt. 470; Virginia Land Co. v. Haupt, 90 Va. 533, 19 S. E. 168, 44 Am. St. Rep. 939.

Applying these principles to this transaction, we find the plaintiff refusing to go forward in the proposed purchase without the personal advice of Mrs. Minar; that on the occasion when she secures that advice, she then and there buys a lot belonging to Mrs. Minar which she has never seen, with no opportunity for independent advice. She pays down $1,000, and delivers her promissory note for $1,398. In return for these payments, she gets not a deed to the land, nor any estate therein which she could sell or mortgage or devise, but a personal contract requiring the vendor upon full payment and at the end of ten years to deliver the deed. This contract being unacknowledged is not recordable among the land records, and consequently is no notice of the right of the vendee to the land.

This right is therefore subject to the vicissitudes of fortune which may befall the land or the vendors thereof during the ten years of the contract, while the record shows that Mrs. Minar discounted the plaintiff's note at her bank, or deposited it as collateral security for her debts, within ten days of its receipt.

And the performance of this contract by the plaintiff is sought to be enforced by providing for a forfeiture of all payments preceding any default continuing for thirty days, so that under this contract, if a default should occur in the last installment of $15, all previous payments could be forfeited, including the down payment of $1,000.

■ "Agreements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will not be enforced." Kothe, Trustee, v. Taylor Trust, 280 U. S. 226, 50 S. Ct. 142, 143, 74 L. Ed. 382.

While the answer of the defendants disclaims any present purpose of exacting such a forfeiture, although the plaintiff under advice of counsel has declined to pay the monthly installments, yet the defendants, speaking of this provision of the contract as an option, assert their right and intention to exercise it when they deem it necessary for their protection.

We are of opinion that this contract of sale between the plaintiff and defendants, made at the time and in the circumstances narrated, cannot be sustained in a court of equity, because it brings undue burdens and hazards upon the dependent party to a confidential relation for the benefit of the superior party thereto.

■ And the contracts between the plaintiff and the defendant company as agent for Deming in the sale of the two lots in Lee Heights stand in no better position, but rather worse.

For these contracts are equally touched with the fiduciary relation assumed by Mrs. Minar, whose company received a commission of ten per cent. for the sale of these lots, and, although her contract of agency authorized their sale for a down payment of 10 per cent. of the purchase price, she obtained a down payment of 33⅓ per cent.

And these contracts, being also drawn on the printed forms, contain the same forfeiture clause applicable upon a default, which the answer of the defendants describes as an option proper to be exercised by Mr. Deming for his protection if he so desires.

But these two contracts, and Mrs. Minar's confidential advice with respect thereto, failed to disclose an existing mortgage upon the Deming lots.

This mortgage falls due long before the completion of these contracts of sale; for an amount larger than the total purchase price; and, while it covers much land in addition to these lots, there is no provision in the mortgage for a release of any portion of the property thereby covered.

"If a vendor or his agent sell an estate knowing there was an encumbrance upon it of which vendee was ignorant, the suppression of such a material fact would avoid the sale for fraud, as the very purchase implied a trust and confidence on the part of vendee that no such encumbrance existed." Story, Equity Jurisprudence, § 296.

So that in these Deming contracts, as in the Minar contract, plaintiff made a large down payment, but got no present title to the land, nor any recordable muniment of title.

Her ultimate right to a deed was subject not only to her own performance of her own contract, but to whatever might happen to the land and the owners thereof during ten years under their contracts, including the mortgage which they did not disclose, but which they hoped to satisfy before her deed became due.

These contracts, made in these circumstances, between parties situated as these parties were, cannot receive the sanction of a court of equity.

148

The suit for their rescission was brought within three months of their execution; a demand for rescission was made earlier; the situation remains among the original parties, and can be corrected by a restoration to their original rights.

By this disposition of the matter, we do not wish to be understood as deciding that Mrs. Minar acted with a fraudulent intention, or with a sinister purpose, but she failed to appreciate the legal implications of the position she assumed at the request of Mrs. Hammett.

She accepted the confidence and trust of Mrs. Hammett, but thereafter did business as usual, upon printed blanks as usual, which were onerous enough between strangers dealing at arm's length, and which could have no place between parties standing in a relation of trust and confidence.

The decree appealed from will be reversed, with costs, and the cause remanded for a decree rescinding the contracts of sale and restoring the parties to their prior rights by surrender of the notes and return of the monies paid.

Reversed and remanded.

GRONER, Associate Justice (dissenting).

The opinion of the court places the ground of reversal on the fiduciary relationship existing between plaintiff and defendants and the inequitable and unfair use of that relationship by defendants (appellees) to their advantage and to the disadvantage of the plaintiff.

I have no fault to find with the statement of the law on that subject, but I am wholly unable to find it has any relevancy to the case made; certainly, it was not pleaded. The bill alleges but one ground for the cancellation of the contract of sale, namely, that the land was not owned by either of the defendants, and that this fact was not known to plaintiff. There is no allegation that the existence of a trust on a part of the land was concealed from plaintiff, or that the provisions and conditions of the contract of sale were undisclosed, and yet, it is because of the existence of the trust on the one hand and the harsh conditions of the contract on the other, that the decree of the lower court is reversed. The record, I think, very clearly shows that, after the making of the contract, plaintiff consulted a lawyer, who, after examination of the title, advised defendants that the contract would not be carried into effect because, and only because, the record title showed defendants did not own the land contracted to be sold, and were therefore without authority to make the contract. In view of this definite statement of the ground of cancellation, I am unable to agree that plaintiff or the court may now annul the contract on another and different ground, or that any amendment of the pleadings would justify such a course. It is the settled law that one who breaches his contract for reasons specified at the time will not be permitted afterwards, when sued for damages, to set up other and different defenses. Luckenbach S. S. Co. v. W. R. Grace & Co. (C. C. A.) 267 F. 676, 679. The Supreme Court, in Ohio & M. R. Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693, states the rule thus: "Where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law." See, also, our opinion in Robb v. Crawford, 56 App. D. C. 394, 16 F.(2d) 339.

I think the decree of the lower court should be affirmed.