# LOCKWOOD *v.* RUCKER.

EVIDENCE; TESTIMONY OF SURVIVING PARTY TO A CONTRACT.

1. Where one of the parties to a contract for the division of attorneys' fees is dead, and, in an action by his executor against the surviving party, the sons of the decedent testified that, at an interview between the parties to the contract, the defendant stated she had earned certain fees and would remit to the other party his share of them, it is competent for the defendant to testify that she made no such statement (construing D. C. Code, sec. 1064, 31 Stat. at L. 1357, chap, 854, prohibiting the surviving party to a contract to testify as to any transaction with or declaration or admission of the deceased party in an action on the contract by the executor of the deceased party against the surviving party.)

2. D. C. Code, sec. 1064, should not be extended to prevent the living party to a contract from testifying to the truth or falsity of mere extraneous facts which have been testified to by other witnesses, not involving declarations or admissions of the deceased party.

No. 2037.  Submitted December 16, 1909.  Decided February 1, 1910.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action on a contract for division of attorneys' fees.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This action was brought in the supreme court of the District of Columbia by appellee, Frank M. Rucker, administrator of the personal estate of James Taylor, deceased, plaintiff below, on a contract between his decedent and appellant. It appears that appellant, Belva A. Lockwood, and one Taylor entered into a contract, whereby the attorney's fee that appellant should receive for the successful prosecution of certain claims of the Eastern Cherokee Indians against the United States was to be equally divided between appellant and said Taylor. The contract is as follows:

That, Whereas: The said Belva A. Lockwood, party of the first part, holds a certain contract from the commissioners and delegates of the Eastern Cherokees, coupled with a power of attorney, for the purpose of prosecuting in the United States Congress and the courts the claim of said Eastern Cherokees to $334,297.75, with interest thereon at 5 per cent from June 12, 1838; said amount having been found due to them by the Secretary of the Interior February 3, 1883; and also to prosecute their share of the allotments of western lands; and for their *pro rata* share of the proceeds of sales of western lands already sold under the treaty of 1866, and also their *pro rata* share of the $4,409,962.46, found due to the Cherokee Nation in an accounting by the Secretary of the Interior, and in

accordance with an agreement made with the Cherokee Na-
tion at Tahlequah, Indian Territory, December 19, 1891, and
approved by Congress March 3, 1893, and other matters against
the Cherokee Nation and the United States.

And, Whereas, this contract contains a promise of a fee of
15 per cent to the said party of the first part, for her services
rendered, and to be rendered, and whereas the said James Tay-
lor, party of the second part, has also rendered valuable serv-
ices in the above recited claims, and intends to continue such
service, it is therefore agreed by and between the parties to
this contract, that in consideration of mutual service rendered,
and to be rendered, and other good and valuable considerations
between the parties hereto, that the said parties of the first
and of the second part shall be equally interested in each and
every recovery that may be had, or allowance made or secured
through these premises, and that such recovery and allowance
shall be equally divided between the said Belva A. Lockwood
and James Taylor, and that said Belva A. Lockwood shall also
be equally interested in a power of attorney and contract held
by said Taylor for 865 Eastern Cherokees, now citizens of the
Cherokee Nation, Indian Territory, and also the ¼ interest
of said Taylor in what is commonly known as the Erwin and
McCloud interest of the 35 per cent of the old settler Cherokee
claim, now pending in the United States Congress.

    (Signed)   .  Belva A. Lockwood.
               James Taylor.

Executed before a Notary.
  Thos. J. Staley.

The present suit is for the recovery of one half of the net
proceeds of a fee of $18,000 allowed appellant by a decree of
the United States court of claims for services rendered in
securing a judgment for a large sum of money in favor of the
Cherokee Nation, the Eastern Cherokees, and the Eastern and
Emigrant Cherokees against the United States. This judgment
ran in favor of the three branches of the Cherokee tribe of In-
dians, and left the matter of the claims of the individual mem-

bers of the tribe, appellant representing individual members of the Eastern Cherokees, subject to future adjustment. It is claimed by appellee, as administrator of the estate of Taylor, that he is entitled to one half of said fee. Appellant, on the other hand, insists that her contract with Taylor does not include this fee, but relates solely to certain individual contracts held by her with members of the Cherokee tribe for fees she was to receive from them for securing their shares of the general fund for which judgment was given. Appellant further insists that the fee here in question was awarded her for services rendered in securing the judgment, and has no relation to fees she may become entitled to under the individual contracts. It appears that appellant had advanced Taylor $1,000 during his lifetime, which is credited on the claim of the administrator involved in the present suit. The case was tried to a jury and a verdict returned for the plaintiff. From the judgment entered thereon appellant prosecutes this appeal.

*Mr. William H. Robeson* and *Mr. Henry P. Blair* for the appellant.

*Mr. Charles A. Maxwell, Mr. Samuel A. Putnam* and *Mr. Charles Poe* for the appellee,

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

There are a number of assignments of error upon which counsel for appellant rely for a reversal, but we think the consideration of one will be sufficient to dispose of this appeal. Two sons of the decedent testified upon the trial that they were present at an interview between the decedent and appellant at Muskogee, Indian Territory, on the 17th day of November, 1906, in which the appellant informed the decedent that she had advanced him $1,000 after the decree of the court, and, as soon as the court paid her the fee allowed, she would remit the balance of his share amounting to $8,000. By way of rebuttal to this evidence, appellant offered to testify that she did not make

these statements. Objection was made and sustained by the court, as to the admissibility of this evidence, to which ruling an exception was taken. The objection was based upon § 1064 of the Code of the District of Columbia [31 Stat. at L. 1357, chap. 854], which provides, among other things: "If one of the original parties to a transaction or contract has, since the date thereof, died * * *, the other party thereto shall not be allowed to testify as to any transaction with or declaration or admission of the said deceased * * * party in any action between said other party * * * and the executors * * * representing the deceased * * * , unless he be first called upon to testify in relation to said transaction or declaration or admission by the other party, or the opposite party first testify in relation to the same."

It is clear that the above statute prohibits the appellant from testifying as to three things if they relate directly to the issues involved in this suit: First, as to any transaction with the decedent; second, as to any declaration of the decedent, and third, as to any admission of the decedent. The evidence in question does not relate to either a declaration or an admission by the decedent, as no statement of the decedent is testified to as having been made at the time of the alleged interview. The evidence sought to be adduced on behalf of the appellant was not a denial of the meeting of the parties at the time and place stated by the two witnesses, but a denial of having made the statement of which they testified. It was not sought to prove by the evidence of appellant anything in relation to the contract between her and the decedent. Neither was she asked to explain anything in relation to the business transactions between them. She was simply asked in regard to the truth or falsity of the testimony of the two witnesses as to her having made the statement that she had earned certain fees and her agreement to forward a portion of the same to the decedent. This, we think, does not come within the inhibition of the statute.

The evidence in question does not relate to the substance of the transaction,—the existence of a contract between the

parties.  Appellant was not called upon to testify as to the existence of a contract, or as to the rights of appellee under said contract, or as to any declaration or admission of the deceased, but to a statement alleged to have been made by appellant, which, if scrutinized carefully, can only be distorted into an implied admission of liability under the contract.  It did not involve the right of recovery under the express contract by appellee; it, at most, involved an admission by appellant of Taylor's interest in a portion of a fund which he claimed was embraced in the contract.  The principal question in this case was not as to the existence of a contract between appellant and deceased,—this was conceded,—but whether, under a proper construction of that contract, appellee could recover a portion of the fee awarded appellant.  The construction of the written contract, which constituted the sole transaction between the parties, did not depend upon the collateral admission here sought to be established against the appellant.  The contract speaks for itself.  Its proper construction is the principal question involved in this case.  It may be suggested that, were the question essential to a determination of this appeal, we think it very doubtful whether the language of this contract can be extended to embrace a claim upon the funds here in controversy.  However, we are not called upon to express an opinion on that point.

The purpose of the statute under consideration is to preserve equality of rights.  While, primarily, it is intended to prevent the estate of the dead from becoming the prey of unscrupulous and designing persons, it should be so construed as to equally protect the living from loss through lack of proof from the source most likely to possess knowledge of the facts.  We think the statute should not be extended to prevent the living party from testifying to the truth or falsity of mere extraneous facts, which have been testified to by other witnesses, not involving declarations or admissions of the deceased party.  In this instance, the truth or falsity of the evidence adduced, which does not involve a declaration or admission of the deceased, but is a matter extraneous to the real transaction between the parties, depends upon the testimony of two sons of the deceased,

—highly interested parties,—with not even a presumption that the father, if alive, would confirm their statements. To seal the mouth of the appellant under such circumstances would be an unwarranted extension of the scope of the statute. In *Lewis* v. *Merritt,* 98 N. Y. 206, the court, considering a somewhat similar statute, broader in scope than ours (in that it included mere communications), which prohibited a party to an action from testifying on his own behalf against an executor of the deceased person concerning a personal transaction or *communication* between the witness and the deceased person, said: "The object and intent of the restriction placed upon the survivor of those engaged in personal dealings and transactions, from giving evidence in relation thereto, will be accomplished if it is limited to cases which preclude him from giving such evidence when it is offered for the purpose of establishing an affirmative cause of action or defense. It is difficult to lay down any general rule which shall cover all possible transactions, but it is safe to say when a party gives material evidence as to extraneous facts, which may or may not involve the negation or affirmation of the existence of a personal transaction or communication with a deceased person, that the adverse party, although precluded from directly proving the existence of such communication or transaction, may give evidence of extraneous facts tending to controvert his adversary's proof, although those facts may also incidentally involve the negation or affirmation of such personal communications or transactions."

The learned justice in the court below, in his opinion, cited the case of *Pinney* v. *Orth,* 88 N. Y. 447, in support of his holding that the appellant in this case should not be permitted to testify as to the truth or falsity of the evidence in question. In *Lewis* v. *Merritt,* supra, the court, referring to the case of *Pinney* v. *Orth,* said: "There a witness had testified to certain interviews occurring between the defendant and the plaintiff's intestate during his lifetime, and it was held competent for the defendant to testify that he never had interviews with the deceased person at the place and under the circumstances

described by the plaintiff's witness. This decision proceeded, not upon the ground that the plaintiff had. given affirmative evidence of personal transactions or communications with the intestate, but upon the broad ground that the prohibition of § 829 does not extend so far as to preclude a party from testifying to extraneous facts and circumstances tending to show that a witness for an adverse party has testified falsely, even though he is thereby called upon to negative the existence of personal transactions and communications between himself and the deceased." While this exact question has not been before presented in this jurisdiction, we think the above construction of the statute is in full accord with the views expressed by this court at length in *Tuohy* v. *Trail,* 19 App. D. C. 79.

Though we attach little importance to this evidence in support of the right of appellee to recover upon the contract, since the contract seems to clearly speak for itself; yet it is not for us to say what effect it had upon the jury. In fact, appellee seems to have relied chiefly upon this testimony for a verdict. The judgment is reversed, with costs, and the court below is directed to grant a new trial.                 *Reversed.*