HANNAH MENDELSON, Appellant, v. ROBERT BOETTGER and Others, Respondents.

Second Department, May 23, 1939.

*Irving Schneider* [*Arthur Hutter* with him on the brief], for the appellant.

*William A. Walsh*, for all respondents excepting Denis M. Morrissey.

HAGARTY, J. On the 16th day of June, 1926, plaintiff purchased from Yonkers Trust Company a $1,000 undivided share in a $25,000 mortgage made by George Griot and Henry Fischer. So the certificate reads, but the mortgage actually was made by George Griot and his wife, and not by Fischer. On the same day, plaintiff purchased a $2,000 undivided share in a $35,000 mortgage made by George Griot and Henry Fischer. The stipulation of the facts, pursuant to which this action is presented, is to the effect that these mortgages were made on adjoining properties, respectively, 20 North Broadway and 22 North Broadway in the city of Yonkers. Examination of the mortgages annexed to the agreed statement of facts, however, discloses that they both cover the same property, the one for $35,000 by Griot and Fischer made in 1916, being a first mortgage, and the one for $25,000 made by Griot and wife, in 1925, being a second mortgage. Nevertheless, since the agreed statement of facts sets forth that the $25,000 mortgage covered 20 North Broadway and the $35,000 mortgage covered 22 North Broadway, for the purposes of this determination the mortgages will be so considered.

In accordance with the mortgage certificates issued to plaintiff, each labeled " First Mortgage Participation Certificate," the Yonkers Trust Company undertook to hold the underlying bonds and mortgages and to serve them as plaintiff's agent and attorney, primarily to collect principal and interest, with power, however, to extend the time of payment of the principal. Thus, in so far as plaintiff's interest is recognized, the trust company held two first liens on different parcels, as her agent. On the 6th day of Septem-

ber, 1928, this agent, representing itself as the holder of these securities, and without authority or consent of the plaintiff, executed an instrument which effectually changed the nature of the respective liens.

Griot's corporation is the owner of both properties. Griot was also a director of the trust company. During 1928, and prior to the twentieth day of September of that year, the trust company had loaned the corporation $40,000 on notes indorsed by Griot personally, which went, at least in part, in improving properties other than those in question here. On September 6, 1928, Griot Realty Corporation, Inc., executed and delivered to the trust company a bond for $40,000 secured by a mortgage on the properties in question. Griot Realty Corporation, Inc., was George Griot's personal corporation in which he and his wife and daughter held all the stock. This $40,000 mortgage, although in fact a third mortgage, shall be regarded under the agreed statement of facts as a second mortgage, subordinate to those in which plaintiff held an interest. On the same day the trust company entered into an agreement with Griot Realty Corporation, Inc., wherein the parties undertook " to co-ordinate and consolidate all three of said mortgages, so that together they shall constitute in law but one first mortgage and joint lien upon all of the premises hereinafter described for the principal sum of One hundred thousand ($100,000) dollars," and to extend payment to the 1st day of January, 1932. Neither Griot, individually, nor Fischer was a party to it. In the recitals contained in this agreement the trust company held itself forth as the " holder " not only of the $40,000 mortgage, but of the $35,000 and $25,000 mortgages in which it had sold interests to plaintiff and others. Nothing is said of the fact that it held these mortgages merely as agent and only under limited authority. The minutes of the meeting of the board of directors of the trust company approving the mortgage and consolidation agreement, held on the 20th day of September, 1928, at which all the defendants except Griot voted, contain the following resolution: "Application of the Griot Realty Corporation for an increase of $40,000.00 over our present mortgage loan of $60,000.00 against the property 20–22 North Broadway was unanimously approved. Mr. Griot not voting."

The power which the trust company thus arrogated to itself to change the nature of the lien of the mortgages in which plaintiff held an interest could arise only from ownership. This constituted conversion. To constitute conversion there need not be an outright misappropriation of the property of another. It is sufficient if there be interference with the owner's dominion over his property

to the exclusion of his rights. In *Laverty* v. *Snethen* (68 N. Y. 522, 524) CHURCH, Ch. J., writes: " Conversion is defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. A constructive conversion takes place when a person does such acts in reference to the goods of another as amount in law to appropriation of the property to himself. Every unauthorized taking of personal property, and all intermeddling with it, beyond the extent of the authority conferred, in case a limited authority has been given, with intent so to apply and dispose of it as to alter its condition or interfere with the owner's dominion, is a conversion. (Bouv. Law Dict., title Conversion.)"

It is contended on behalf of the respondents, who were directors and officers of the trust company, that the transaction involved only an agreement " for the purpose of more conveniently carrying these three mortgages on the books of the Trust Company," and that the courts ultimately would not permit the defendants or the trust company to benefit by it. Obviously, it was not a mere bookkeeping transaction. Neither the trust company nor the defendants obligated themselves to reimburse the plaintiff in the event of loss by reason of the impairment of her securities, and whether or not they derive personal advantage is immaterial. It is stipulated that all the mortgages involved in the consolidated agreement are in default, that a considerable amount of taxes is due, and that no interest has been paid since January of 1932. Who can say that this default would have resulted had the incumbrances remained at $60,000, the combined amount of the original mortgages? But the trust company hesitated to carry on its books an investment of $40,000 in a third mortgage, and hence the spontaneous action on the part of these defendants to approve the consolidation of the trust company's third mortgage by the agreement made on the same day the mortgage was created, raising it to the dignity of a first mortgage, on an equal basis with those in which the plaintiff held participating interests. Not only that, but as stated, the merger and extension were without the consent of the plaintiff and the original mortgagors, Griot and Fischer. These latter individuals may now defend any action seeking to impose liability upon them as makers of the original bonds and mortgages on the plausible theory, substantiated by respectable authority, that the act of plaintiff's agent in extending the mortgages without their consent relieved them from further liability as a matter of law.

To all this it is not an answer to predict that upon final foreclosure of the consolidated mortgage, the equities will be so adjusted

between the plaintiff and the trust company to the end that no advantage will be accorded the trust company by reason of the acts of these defendants, and that the original mortgagors may be held on the theory that the extension and consolidation did not discharge them as a matter of law, since the agreement was beyond the power of the trust company to make. These questions may be passed at this time. By the act of defendants, the security has been plunged into confusion, and possibly default, resulting in injury and expense to the plaintiff, and that is all that is necessary to sustain a cause of action in conversion. Plaintiff has sustained damage, and in accordance with the agreed statement of facts, if she is entitled to relief, she is entitled to judgment of $3,000, upon tender of the certificates held by her.

All the defendants were directors of the Yonkers Trust Company and voted to make this mortgage of $100,000, with the exception of George Griot, whose corporation was involved. Griot, although a director, did not vote, but in view of his close association with the transaction, he is, of course, as responsible as the others. Although the individual directors purported to act on behalf of the corporation, they are liable directly to the plaintiff for conversion. Thus, in *McCrea* v. *McClenahan* (131 App. Div. 247), we held a president of a corporation individually liable where, acting on behalf of his corporation, he refused to return to plaintiff property belonging to him. (See, also, *Debobes* v. *Butterly*, 210 App. Div. 50, 53, 54; *Passaic Falls T. Co.* v. *Villeneuve-Pohl Corp.*, 169 id. 727; *Hinkle Iron Co.* v. *Kohn*, 229 N. Y. 179, 184.)

The judgment dismissing the complaint should be reversed on the law, with costs, and judgment directed for the plaintiff, with costs, in accordance with the stipulated facts. As the facts were stipulated, no findings were necessary, and all such findings and the conclusions of law should be struck out as unnecessary.

JOHNSTON, ADEL and TAYLOR, JJ., concur; LAZANSKY, P. J., concurs in result.

Judgment dismissing the complaint reversed on the law, with costs, and judgment directed for plaintiff, with costs, in accordance with the stipulated facts. As the facts were stipulated, no findings were necessary, and all such findings and the conclusions of law are struck out.

Settle order on notice.