### CAFRITZ v. CORPORATION AUDIT CO. et al.

Civ. No. 23005.

District Court of the United States for the District of Columbia.

May 14, 1945.

---

[1] No opinion for publication.

Milton Strasburger, of Washington, D. C., for plaintiff.

Neil Burkinshaw and Dennis Collins, both of Washington, D. C., for defendants.

WYCHE, District Judge (sitting by special designation).

This is an action by Morris Cafritz for discovery and accounting; for a joint and several judgment against the Corporation Audit Company and Rose· Robins, administratrix of the estate of Barney Robins, deceased, for the sum of $36,134.75; for judgment against the Corporation Finance Company for the sum of $8,400, and for judgment against Rose Robins, individually, for the sum of $2,889.

By his amended complaint plaintiff alleges that during the year 1941, and for a number of years prior thereto, he had retained and employed the Corporation Audit Company as an expert accountant and auditor to keep and maintain certain books of record for himself and for several corporations in which he was directly interested as an officer and stockholder, including the books used in connection with a bank account maintained by the plaintiff in the Bank of Commerce & Savings, to audit all of his books and records at the end of each calendar year, and to prepare his income tax returns; that Barney Robins, now deceased, was the general manager in exclusive charge, direction and management

of the business of the Audit Company, and had actively participated in all of the transactions between Cafritz and the said company; that during the period aforesaid, plaintiff reposed special trust and confidence in the Audit Company and in its general manager, Robins, resulting in a fiduciary relation on the part of the Audit Company and its manager toward the plaintiff; that between February 16, 1941, and October 28, 1941, the Audit Company, by its general manager, caused to be paid out of the said bank account certain monies belonging to the plaintiff, amounting to $36,134.75, for the benefit of the Audit Company, or of its manager, and not for the benefit of the plaintiff; that the Audit Company maintained and kept in its office certain of plaintiff's records and books of account, including check books, bank statements, and paid and cancelled checks on the Bank of Commerce & Savings; and that although plaintiff had duly demanded the same, the defendant had wholly failed and refused to deliver them to the plaintiff. It is further alleged that on or about October 29, 1941, Robins caused to be deposited in a certain bank account to the credit of the Corporation Finance Company (a company controlled by him) one of the checks of the plaintiff for the sum of $8,400.

In their answer to the complaint the defendants admit that the Corporation Audit Company was employed by the plaintiff, as alleged in the complaint, and that Robins was an officer and general manager of the Audit Company. They deny the allegation relating to the conversion of the funds. With respect to the deposit of a check for the sum of $8,400, in the account of the Corporation Finance Company, the defendants aver that such deposit was made but that it was in the nature of a "wash transaction", whereby the defendants received no benefit.

In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, I find the facts specially as follows:

### Findings of Fact.

1. Morris Cafritz, a builder and real estate broker, during the year 1941, and for twelve years prior thereto, had employed the Corporation Audit Company as bookkeeper, auditor and certified public accountant, to keep and maintain Cafritz's original books of entry and those of several Cafritz-controlled corporations; to deposit checks on his behalf in several banks, and to make out income tax returns for Cafritz and his several corporations. Barney Robins was secretary of several of such corporations, and was at all times actively in charge of the affairs of the Audit Company, of which he was general manager and executive officer.

2. Cafritz reposed special trust and confidence in the Audit Company and in Robins.

3. All fees for the services performed by the Company, including those for the year 1941, as the same became due and payable, were regularly paid by Cafritz.

4. Cafritz maintained and owned an account in the Bank of Commerce & Savings in the name of "Cafritz & Specter", and also maintained certain accounts in other banks in his own name, and in the name of his several corporations.

5. During the year 1941, Robins, on behalf of Cafritz, deposited certain checks in the Bank of Commerce & Savings and also on said behalf deposited checks in other banks to the credit of Cafritz and his corporations.

6. Checks on the Cafritz and Specter bank account were always prepared by the Audit Company, signed by Cafritz, and handed to Robins to be deposited to the credit of the Cafritz corporations.

7. During the month of February, 1941, the Audit Company prepared, and Cafritz signed, four checks payable to his corporations, and some months later a fifth check was prepared and signed in the same manner. These five checks were executed for the purpose of making loans to the Cafritz corporations, and were handed to Robins to be deposited in the bank to the credit of the respective payees, and were to be entered by the Audit Company on the books of record of the Cafritz corporations as loans, and were also to be entered in the Cafritz and Specter ledger, which at all times was kept and maintained in the office of the Audit Company until it was demanded by Cafritz's bookkeeper during the month of August, 1941. The other books of account were at times in the office of the Audit Company, and at other times in Cafritz's office, but were at all times maintained and kept by or under the supervision of the Audit Company.

8. The Bank of Commerce & Savings at all times sent monthly statements of the Cafritz and Specter account, together with paid checks, to the office of the Audit Company in the Rust Building, in which build-

ing none of the Cafritz corporations were located.

9. These statements and paid checks, although demanded, were never delivered to Cafritz by the Audit Company or any other person or corporation.

10. The five checks aforesaid were charged by the bank against the Cafritz and Specter account in the amounts and on the respective dates following:

| Dates | Amounts |
| --- | --- |
| February 17, 1941, | $8,000.00 |
| February 18, 1941, | 7,575.25 |
| February 19, 1941, | 6,159.50 |
| February 20, 1941, | 6,000.00 |
| October 25, 1941, | 8,400.00 |

11. In August of 1943, agents of the Internal Revenue Department called Cafritz' attention to the first check above enumerated, which had on the bank records a lead pencil reference to Robins, the agents wanting to know whether Cafritz had ever given Robins personally a check for $8,000, to which Cafritz replied in the negative.

12. Cafritz at once obtained a photostat copy of the bank records for 1941, and employed a public accountant to examine all of his books of record, and the books of his corporations, to ascertain whether all of the withdrawals shown by the bank statement of the Cafritz and Specter account were entered on his books of account and properly accounted for.

13. The public accountant made the examination requested, and ascertained and reported that the withdrawals represented by the five checks mentioned were not entered on the Cafritz and Specter ledger or on any other account book of Cafritz or his corporations.

14. Cafritz promptly sent for Robins, and requested an explanation of what had become of the five checks aforesaid, or the proceeds thereof, and an accounting therefor.

15. After waiting a reasonable time Cafritz wrote a letter to Robins, under date of August 18, 1943, calling specific attention to the five checks aforesaid, and requesting an immediate accounting.

16. In response to said letter Cafritz received from Benjamin Kay, Robins' brother-in-law, a letter dated August 20, 1943, calling attention to Robins' then absence from the city, and promising to call the letter to Robins' attention upon his return.

17. A son of Robins called to see Cafritz and requested him to await his father's return to the city.

18. On October 11, 1943, Cafritz wrote a letter to Benjamin Kay, calling attention to the importance of his former letter, but received no reply.

19. Cafritz placed the matter in the hands of his attorney, who wrote a letter to Robins, threatening suit, but no reply was received to this letter.

20. Within a few days after the last demand Robins departed this life. The defendant Rose Robins has been appointed administratrix of his estate.

21. No accounting with respect to the $36,134.75, represented by the five checks on the Cafritz and Specter account, has ever been made by the Audit Company or Robins.

22. Cafritz and his corporations never received the proceeds of said checks or any part thereof.

23. On October 25, 1941, Robins deposited in the Security Savings & Commercial Bank to the credit of his controlled corporation, known as the "Corporation Finance Company", a check on a local bank for the sum of $8,400. Two days later there was charged against the Cafritz and Specter account a withdrawal of the exact sum of $8,400, represented by one of the checks aforementioned.

24. On October 28, 1941, the Corporation Finance Company by Barney Robins, its vice-president, drew a check on the Security Savings & Commercial Bank, payable to the order of Barney Robins, individually, for the sum of $8,400, and this check was cashed by Robins.

25. The defendants have offered no evidence to show the source from which the check for $8,400 was received by the Corporation Finance Company, and no entry for said deposit was made in the books of the Finance Company.

26. Cafritz had never had any dealings or transactions with the Corporation Finance Company (a Robins enterprise) and at no time was indebted to said company in any sum whatsoever.

27. The page in the Cafritz and Specter ledger devoted to the bank account at the Bank of Commerce & Savings, is devoid of entries of deposits and withdrawals during the year 1941, although such entries had been made in years prior thereto.

28. Plaintiff gave notice to defendants to produce the bank statements, paid checks,

the minute book and stock book of the Audit Company, but the defendants failed to produce any of these documents or books.

29. Service of the Audit Company was terminated by Cafritz at the close of the year 1941.

30. In 1943, the furniture, trade-name and customers of the Audit Company were sold. Robins collected part of the purchase price, and after his death, Mrs. Robins, in her individual capacity, and before her appointment as administratrix, collected and received from the purchasers of said assets the sum of $2,889.

31. The Audit Company at no time notified Cafritz of any change in the manner in which it was conducting its business; it continued at all times to maintain its office in the Rust Building, with the name of "Corporation Audit Company" printed on the door. Bills for services rendered Cafritz were always in the name of said Company. The bank account of the Audit Company in the Security Savings & Commercial Bank was opened on January 1, 1930, and was continued uninterruptedly and without change until August 30, 1942, at which time the account was closed. The Audit Company was never legally dissolved.

### Opinion.

At the threshhold of this case, it becomes necessary to determine the measure of duty owing by the Audit Company and Robins to the plaintiff, and this depends upon the determination of the relationship existing between the plaintiff on the one hand, and the Audit Company and Robins on the other. It is plaintiff's contention that there existed a fiduciary relation, while this is vigorously denied by the defendants. Whether a fiduciary relation exists or not is always a question of fact. As stated by Pomeroy, Equity Jurisprudence, § 956, "Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new instances might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it may be moral, social, domestic, or merely personal." Hammett v. Ruby Lee Minar, Inc., 60 App. D.C. 286, 53 F.2d 144, 146. In the case of Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 548, 156 So. 116, 118, 95 A.L.R. 258, it was aptly said: "Public accountants and auditors hold themselves out to be skilled and competent to perform the duties and services which they undertake to perform as accountants and auditors, and they are bound in law to perform such services in an accurate and skillful manner. When auditors and accountants are employed for the purpose of auditing books and accounts they occupy a relation of trust and confidence to their employer based upon the superior knowledge of the business of accounting and auditing possessed by the auditors and accountants."

In the District of Columbia it has been recognized that the practice of accountancy has assumed such importance and requires such experience and special training as to warrant regulation. Goldsmith v. Clabaugh, 55 App.D.C. 346, 6 F.2d 94. And licenses are only issued to persons of good moral character, and after passing an examination by the Board of Accountancy. D.C.Code, §§ 2—901 to 2—906.

It is well established that when the defendant is an accounting party, and stands as one occupying a fiduciary relation toward the plaintiff, because of money or property intrusted to him, the burden is upon him to show that he has performed his trust and the manner of its performance. He owes this duty because of the confidential relation he bears to his principal, and because he is presumed to know how he has performed his duty. Wootton Land & Fuel Co. v. Ownbey, 9 Cir., 265 F. 91. The burden of proof is on the accountant after he has admitted the relation and the receipt of a certain sum, to prove that he had disposed properly of the amount for which he is accountable, and to show what that amount is. Pappathanos v. Coakley, 263 Mass. 401, 161 N.E. 804. The duties arising out of fiduciary relationship and the burden of establishing the performance of such duties are recognized in several District of Columbia cases. Hammett v. Ruby Lee Minar, Inc., supra; Overholt v. Matthews, 48 App.D.C. 482. The duty of a fiduciary to account extends to property as well as money. This would necessarily include checks and other negotiable instruments. Klinzing v. Blauw Bros., Sup., 160 N.Y.S. 631.

It will be observed from the findings of fact that the check for the sum of $8,400 was cleared by the Bank of Commerce & Savings on October 25, 1941; that two days prior thereto a check on a local bank for a like amount was deposited by

Robins in the Security Savings & Commercial Bank to the credit of the Corporation Finance Company, which was one of Robins' controlled companies; that on the same day, the Finance Company drew a check payable to Barney Robins for the full amount so deposited and this check was duly cashed; that a microfilm copy of the last-mentioned check was offered and received in evidence. The defendants offered no evidence to explain the source from which the check for $8,400 came, nor why the Finance Company drew a check for that amount to the order of Robins. If a check for such an amount had come into the possession of the Finance Company as the result of a legitimate transaction the records of that company would have shown the source from which the check was received; no such records were produced, and no explanation was made respecting this deposit. In the absence of such a showing the inference may reasonably be drawn that the check for $8,400 was the one which had been delivered to the Audit Company for the specific purpose alleged by the plaintiff.

The method employed by the defendants in cashing all of the five checks would have been fully disclosed had the paid checks been produced at the trial. It was not within the power of the plaintiff to produce them because they never came into his possession after they had reached the bank for payment. It is admitted by the defendants that these paid checks were sent by the Bank of Commerce & Savings to the Audit Company, and no effort was made by the defendants to prove that they were ever delivered by the Audit Company to Cafritz. The evidence offered by the plaintiff established the fact that he never received them from the Audit Company. In this state of the evidence it was the duty of the Audit Company to have produced the checks, or to have explained the reason for their failure to do so. All evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted. Gotham Silk Hosiery Co. v. Aircraft Silk Hosiery Mills, 3 Cir., 147 F.2d 209.

All of the records of the Audit Company were in the possession of Robins at the time of his death, and have come into the hands of his administratrix, and of her brother, Maurice Kay. The personal ledger maintained by the Audit Company for Cafritz was produced at the trial and shows that all transactions with the Bank of Commerce & Savings, including deposits and withdrawals, were entered by the Audit Company in such ledger prior to the year 1941, but during that year, although the book remained in the possession of the Company and was always under its supervision, contained no entries of any deposits and withdrawals. The Audit Company failed in the performance of its duty to enter these transactions in this ledger. Robins, during his lifetime, had ample opportunity, after demand by the plaintiff, to have made an accounting or explanation of the failure to enter these transactions in the personal ledger as well as in the corporate ledgers of the Cafritz companies. No such explanation or disclosure was ever made. When a fiduciary is under a duty to account and he fails to do so the only inference to be drawn is that he could not satisfactorily explain the transaction without an admission of guilt.

A question has been raised by the administratrix as to the admissibility of certain testimony offered on behalf of the plaintiff, it being contended that such testimony is in violation of the so-called "surviving party" rule. No objection thereto was made by the other defendants, and of course none could be successfully maintained by them in view of a recent decision of the United States Court of Appeals for the District of Columbia. Lucas v. Hamilton Realty Corporation, 70 App.D.C. 277, 105 F.2d 800.

There are two sections of the District of Columbia Code dealing with the admissibility of testimony of a surviving party as against the personal representative of a deceased person. The first section renders inadmissible the testimony of the survivor "as to any transaction with or declaration or admission" of such deceased party. D.C.Code, T. 14, § 302. The other section renders admissible the testimony of all parties "where any of the original parties to a contract or transaction * * * are partners or other joint contractors, or jointly entitled or liable, and some of them have died." D.C.Code, T. 14, § 304.

If section 302 stood alone, Cafritz' testimony as to transactions with the deceased would have been inadmissible, although, as stated by the Court of Appeals for the District of Columbia, "the statute should not be extended to prevent the living party from testifying to the truth or falsity of mere extraneous facts * * * not involving declarations or admissions of the deceased party." Lockwood v. Rucker,

34 App.D.C. 376, at page 381. In the District of Columbia the courts have frequently ruled that section 302 should be strictly construed. Lucas v. Hamilton Realty Corporation, supra, and cases cited therein.

Plaintiff places his reliance upon section 304, and contends that since the Audit Company and Robins are "jointly liable", the former because of its violation of a fiduciary duty, and the latter because he actively participated in such wrongdoing, the testimony of Cafritz is admissible not only against the Audit Company, but also against the administratrix of Robins.

This statute was incorporated in the D.C.Code at the time of its adoption. I understand that the Code was prepared by a committee of lawyers and judges, and adopted in its entirety by Act of Congress on March 3, 1901. The various sections of the Code were not separately discussed by Congress, and consequently there is no legislative history of any value connected with the statute in question. It was evidently thought by the codifiers that if there were more than one person involved in the transaction there would be no danger in having full admission of evidence of all parties, such as would occur if the transaction were between two parties only and one had died. A corporation is represented by its officers and agents, consequently, a number of persons could be acquainted with the transaction. In the present instance, however, it so happens that no person other than Robins represented the corporation. This is an unusual situation not covered by any exception in the statute. Consequently, notwithstanding the fact that one of the parties jointly liable is a corporation, it would seem that this statute should be applied. If this had been a suit on a promissory note signed jointly by a corporation and an individual, it seems that the testimony of all of the parties would have been admissible under the statute. Here there are two parties who are jointly liable to the plaintiff, and, under the statute, I believe that the testimony of all the parties to the transaction should be admitted.

However, I do not regard this question of importance in this case, because the only reference in the plaintiff's testimony related to extraneous facts "not involving declarations or admissions by the deceased party," and further, because the written evidence in this case establishes the fact that Robins actively participated

in the wrong perpetrated by the Audit Company. Executive officers of a corporation are personally chargeable with acts of a corporation if they knowingly caused the corporate acts. 3 Fletcher Cyclopedia, Corporations, Sec. 1135; American Agricultural Chemical Co. v. Barnes Co., D.C., 28 F. Supp. 73; 19 Corpus Juris Secundum, Corporations, §§ 845 and 849, pp. 271 and 277; 13 Am.Jur., § 1095, p. 1026; Mendelson v. Boettger, 257 App.Div. 167, 12 N.Y.S.2d 671. It is admitted by the administratrix in her answer to the complaint and also in the pre-trial stipulation, that "all of the work" on behalf of Cafritz "was performed by Robins, who was in exclusive charge, direction and management of the business of the Audit Company". In addition to this, the deposit slips in Robins' handwriting show that he frequently made bank deposits for plaintiff. Then, again, the deposit of the $8,400 check in the Security Savings & Commercial Bank was also in his handwriting; likewise, the check of the Finance Company for like amount, payable to Robins, whereby he withdrew said sum from the bank was in his handwriting. As general manager of the Audit Company the paid checks in question came into his personal possession. With respect to the liability of the Finance Company for $8,400, it is apparent that this company, with the knowledge of its officers, participated in the cashing of the check for that amount. Any person who aids in diversion of funds held by an agent is subjected to full responsibility. 2 Am. Jur., § 282, and cases cited in note 4.

During the month of March, 1943, all of the assets of the Corporation Audit Company, including its good will, were sold. After the death of Robins, his wife, the defendant, Rose Robins, before her appointment as administratrix, and in her individual capacity as one of the stockholders of the company, collected from the purchasers of the assets the sum of $2,889. The sale was made at a time when the company was indebted to Cafritz, and the funds received therefrom constituted a trust fund for the benefit of creditors. 13 Am.Jur., § 1047, notes 14 and 18; Nelson v. Jones, 38 Idaho 664, 224 P. 435, 38 A.L.R. 85; Scovill v. Thayer, 105 U.S. 143, 26 L.Ed. 968.

One further question has been raised by the defendants. In their answer it is alleged that the Audit Company discontinued its business in the year 1939. In support of this contention only one item of

634

testimony was offered in evidence, namely, a copy of the Federal Tax Return of the company, bearing a memorandum that it intended to abandon its business. This tender was objected to by the plaintiff. It appears to be inadmissible for the purpose for which it was offered because the best evidence of the discontinuance of the business of the corporation would have been the minute book of the Audit Company, showing a resolution to that effect. This minute book was not produced, although plaintiff served notice for its production. It is admitted by the defendants that the Audit Company has never been legally dissolved. The plaintiff's evidence shows that he was never notified of any abandonment of the business of the Corporation Audit Company; that he continued to conduct his business as usual with the Audit Company uninterruptedly until the latter part of the month of December, 1941. The auditing business was continued at all times in the same offices in the Rust Building, with the corporate name displayed on the window. Plaintiff also produced and offered in evidence paid bills in the name of the Corporation Audit Company for services rendered Cafritz during the entire year of 1941. In this state of the evidence I am of the opinion that the Audit Company is estopped from claiming that it had discontinued its business as alleged.

For the foregoing reasons, and in further compliance with Rule 52(a) of the Rules of Civil Procedure, I state separately my conclusions of law as follows:

### Conclusions of Law.

1. The defendant Corporation Audit Company, a District of Columbia corporation, and Barney Robins, its general manager, during the year 1941, bore a fiduciary relationship toward the plaintiff.

2. It was the duty of said defendant Corporation Audit Company to deposit in bank to the credit of the Cafritz-controlled corporations the five checks aggregating the sum of $36,134.75, entrusted to the said defendant for that specific purpose, and it was the further duty of said defendant to enter said checks in plaintiff's personal ledger and in the books of records of his corporations.

3. Having failed so to deposit the said checks, and the same having been paid by the Bank of Commerce & Savings from funds on deposit to the credit of the plaintiff, it became the duty of the Corporation Audit Company and Barney Robins to disclose to plaintiff, when requested, what disposition had been made of the proceeds of said checks and to account for same.

4. Having failed to make appropriate record entries, and having failed, upon demand, to disclose what disposition had been made of the proceeds of said checks, or to account to the plaintiff, for the same, plaintiff is entitled to a final judgment against the defendant Corporation Audit Company for the full sum of $36,134.75, with interest from October 25, 1941, together with costs of suit.

5. Barney Robins having actively participated in all of the transactions aforesaid, his estate is likewise liable for said sum, with interest and costs; but final judgment against Mrs. Robins, administratrix of said estate, will not be entered herein until plaintiff has complied with the provisions of Title 20, section 502 of the District of Columbia Code (1940 Edition) and jurisdiction of this cause is retained for the purpose of enabling the plaintiff to comply with said law, and for the purpose of entering a final judgment against the administratrix pursuant thereto.

6. The defendant Corporation Finance Company, a corporation organized under the laws of Delaware, is liable to the plaintiff for the sum of $8,400, being the proceeds of one of the aforesaid checks, because it actively participated in the cashing of same, with full knowledge on the part of the officers of said corporation of the purpose for which the check had been delivered by plaintiff to said Audit Company.

7. The assets of the Corporation Audit Company constituted a trust fund for the benefit of its creditors, including plaintiff.

8. Mrs. Rose Robins, in her individual capacity, holds in trust for plaintiff the sum of $2,889, being the amount personally received and collected by her during the year 1943 from the proceeds of the sale of all of the assets of the Audit Company, she being at said time an officer and stockholder of the Audit Company; and plaintiff is accordingly entitled to judgment against Mrs. Robins for said sum.

9. The plaintiff shall receive and collect from all of the said defendants not more than the full sum of Thirty-six Thousand One Hundred Thirty-Four Dollars Seventy-Five Cents ($36,134.75), with interest and costs, and that upon the payment of the sum aforesaid the judgments against all of the defendants shall be deemed to be settled in full.

The entry of appropriate judgment will be accordingly directed by proper order.