## Dillinger, Appellant, *v*. Ogden.

*Real property—Contracts for the sale of land—Options—Construction—Equity—Specific performance.*

1. An agreement relating to the sale of land, signed and sealed by the parties, providing for the payment of "hand money" in cash, the vendor to give his notes for the same, "to be refunded in case the title should prove unsatisfactory"; providing that the vendee should take the rents, issues and profits from the date of the agreement, and allowing the parties of the second part "thirty days within which to examine the title to the said real estate, and only on condition it should prove to be satisfactory to them shall they be bound to perform this contract on their part"; and requiring that the deed be prepared thereafter as soon as possible, and be sent to the party of the first part for execution and delivery, is a contract for the sale of land, binding upon both parties, and not an option for the purchase of land.

2. A title which is required to be "satisfactory" to the party by whom it is to be received means a title to which there is no reasonable objection, and with which the party ought to be satisfied, and such a title he is bound to accept.

3. Where a contract for the sale of land is made and the prop-

erty is afterwards conveyed to another with notice of the original contract, the alienee is liable for the performance of the original contract at the suit of the purchaser.

4. Where a bill in equity for specific performance averred a contract by which plaintiffs had agreed to purchase from a third person such person's interest in a tract of land, wherein it was provided that the vendees would have thirty days in which to examine the title and should be bound to perform only on condition that the title should be satisfactory to them and that the deed should be prepared as soon thereafter as possible, and should be sent to the party of the first part for execution and delivery; that plaintiffs had sent the deeds to the owner of the land for execution nine days after the expiration of the thirty days specified, and on the same day recorded the agreement, but the owner had refused to convey to plaintiffs, on the ground that the contract was an option, which had expired, and thereafter had conveyed to the defendant who had notice of the agreement; and prayed that defendant be required to convey the land to plaintiffs according to the agreement, the court erred in sustaining a demurrer to the bill, and a decree dismissing the bill was reversed.

Argued Oct. 9, 1913. Appeal, No. 148, Oct. T., 1913, by plaintiffs, from decree of C. P. Westmoreland Co., No. 776, in Equity, sustaining demurrer to bill in case of D. L. Dillinger and W. A. Huff v. Anna W. Ogden, Trustee. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity for specific performance. Before Mc-CONNELL, J.

The opinion of the Supreme Court states the facts.

The defendant demurred to the bill. The court sustained the demurrer and dismissed the bill. Plaintiff appealed.

*Error assigned* was the decree of the court.

*James S. Moorhead,* with him *Robert W. Smith,* for appellants, cited, Sylvester v. Born, 132 Pa. 467.

*Charles E. Whitten* and *Paul H. Gaither,* for appellee.

OPINION BY MR. JUSTICE POTTER, February 2, 1914:

This was a bill in equity filed to compel specific performance of an alleged contract for the sale of real estate. It is averred that on December 11, 1909, plaintiffs entered into a contract with Jacob W. McCausland whereby he agreed to sell and convey to them in fee simple, and they agreed to purchase, an undivided one-half interest in certain real estate in Greensburg, Pennsylvania, for the consideration of $33,000. The agreement was signed by all three parties. It provided that $3,500.00 of the purchase money was to be paid in cash, as "hand money," the vendor to give his notes for the same "to be refunded in case the title should prove unsatisfactory"; a further sum of $19,500, to be paid in cash on the execution and delivery of the deed, and the balance of $10,000, was to be secured by judgment bond, or bond and mortgage on the premises, payable three years after the delivery of the deed, with interest from that date at the rate of five per cent. per annum, payable annually. The rents, issues and profits of the property sold were to go to plaintiffs from the date of the agreement. A further stipulation was as follows: "The said parties of the second part shall have thirty days within which to examine the title to the said real estate, and only on condition it should prove to be satisfactory to them shall they be bound to perform this contract on their part. The deed to be prepared as soon thereafter as possible, and to be sent to the party of the first part (McCausland) for execution and delivery by himself and his wife." It is averred in the bill that plaintiffs having caused the title to the real estate to be examined and being satisfied therewith, and having prepared a deed in accordance with the contract, on January 19, 1910, sent it for execution to McCausland, who with his wife was then in Paris, where they were temporarily residing; but the deed was returned unexecuted, under the claim that the contract was only an option and as compliance had not been made with its

terms within thirty days from its date, McCausland was not bound by it; that in August, 1910, plaintiffs again requested him in the presence of his wife to comply with the terms of the contract, but he refused to do so and has persisted in that refusal; plaintiffs have always been ready and willing to carry out the contract; that the agreement was duly recorded on January 19, 1910, in the recorder's office for Westmoreland County, Pennsylvania; that on April 10, 1910, McCausland and wife conveyed their interest in the premises in question to the defendant, Anna W. Ogden, Trustee, and assigned of record to her their interest in the rents, issues and profits thereof; that defendant had notice both actual and of record, of McCausland's agreement with plaintiffs; that plaintiffs had tendered to defendant the balance of the purchase money and a bond and mortgage for $10,000 drawn in accordance with the terms of the contract of sale, which she had refused to accept, and had also refused to execute and deliver to plaintiffs a deed for the premises purchased by them. The prayer of the bill is for specific performance by defendant of the contract of sale. Defendant demurred to the bill assigning among others the following reasons: "(1) The contract, of which specific performance is sought, is an option. The plaintiffs failed to accept the terms thereof within the time therein limited, or thereafter, whereby the same became inoperative as to Jacob McCausland and the defendant. (2) The plaintiffs, having failed to examine the title in question within thirty days after December 11, 1909, or to notify Jacob McCausland within the period aforesaid or thereafter, that such title was satisfactory to them, had no right, after January 10, 1910, to demand of said McCausland a conveyance to them of said land. The plaintiffs have been guilty of laches." The court below sustained the demurrer for the reasons cited, and dismissed the bill at plaintiffs' costs. Plaintiffs have appealed.

The first question arising is whether the agreement of

which specific performance is asked, is a contract for the sale of real estate or was merely an option to purchase. If the stipulation as to the title, be for the moment disregarded, it is apparent that the agreement constitutes a complete contract of purchase and sale; it was signed and sealed by both parties. McCausland agreed to sell and Dillinger and Huff agreed to buy. The property sold was described and defined with certainty. The price to be paid and the time and manner of payment were definitely fixed and the first payment of $3,500 was acknowledged. Provision was also made that the vendee should receive the rents, issues and profits of the property to be sold, from the date of the agreement. It is not unusual to insert in agreements for the sale of real estate conditions that the title shall be good and marketable and free of encumbrances, otherwise the contract not to be binding on the vendee. Here, the condition was that the title should be satisfactory to the vendees and that they should have thirty days to examine the title and ascertain if it was satisfactory. They were bound to performance of the contract if the title proved to be satisfactory. This condition was for the sole benefit of the vendees. They did not agree to take an unsatisfactory title, but they were limited to a period of thirty days in which to make the examination, and to reach a conclusion, not as to whether they should purchase, but only as to whether or not the title was satisfactory. They were limited solely to passing judgment upon the title. There is no stipulation that they would notify the vendor of their decision except through the preparation and sending to him a deed "as soon thereafter as possible," that is, after the examination was completed and the decision made. Lack of mutuality in the contract is suggested but there is the same mutuality as exists in every contract of sale, which is subject to conditions. If it is assumed that time was of the essence of the contract, the conclusion might well follow, that when the vendees permitted the thirty days to pass with-

out rejecting the title, both parties became unconditionally bound. Taking notes to secure the repayment in case of an unsatisfactory title, of the $3,500.00 paid on account, did not convert that payment into a loan. The payment was expressly made on account of the purchase money and the notes were given merely to protect the vendees in case the title did not prove to be satisfactory. The payment was receipted for as "hand money" given as an earnest, to bind the bargain. As we read the agreement it shows clearly the intention of the parties that it should constitute a contract of sale, with but one single condition, which was that the title should be satisfactory. While time was given for examination, in order to ascertain whether the title was good, yet the vendees were not at liberty to refuse arbitrarily to accept. They could not reject the title capriciously. If it was good, they were bound to take it. Abundant authority is to be found for this position. Thus in Folliard v. Wallace, 2 Johns. (N. Y.) 395, the grantee of land covenanted that he would pay the purchase money to the grantor "three months after he should be well satisfied that the title was undisputed and good against all other claims." In an action for the purchase money, Chief Justice (afterwards Chancellor) KENT said, (p. 402) : "Nor will it do for the defendant to say he was not satisfied with his title, without showing some lawful incumbrance or claim existing against it. A simple allegation of dissatisfaction, without some good reason assigned for it, might be a mere pretext, and cannot be regarded. If the defendant were left at liberty to judge for himself when he was satisfied, it would totally destroy the obligation, and the agreement would be absolutely void.......The law in this case will determine for the defendant when he ought to be satisfied." In Moot v. Investment Assn., 157 N. Y. 201, an action for the recovery of purchase money, MARTIN, J., said (p. 211) : "But it is said that the language of the contract was that the deed should convey a good and satisfactory

title.  Much stress is placed upon the word 'satisfactory.'
We think that word in no way changes the contract.  A
good title must be regarded as a satisfactory one."  The
language of Chief Justice KENT in Folliard v. Wallace
cited above is then quoted.  And it is further said : "This
doctrine was reasserted in Brooklyn v. Brooklyn City
R. R. Co., 47 N. Y. 475, (479), and again in Miesell v.
Globe Mutual Life Ins. Co., 76 N. Y. 115 (119)."

In Pennington v. Howland, 21 R. I. 65; STINESS, J.,
after pointing out (p. 68) the distinction between a
stipulation for satisfaction where the subject of the con-
tract involves personal taste or feeling and one which
involves only quality, workmanship, salability, or other
like consideration, said, "For example, if one agrees to
sell land with a satisfactory title, and shows a title valid
and complete, the parties must have intended such a
title to be satisfactory, rather than to leave an absolute
right in the purchaser to say, 'I am not satisfied,' when
no reason could be shown why he should not be satis-
fied."   In Latrobe v. Winans, 89 Md. 636, PEARCE, J.,
quotes (p. 650) the language of Judge STINESS in Pen-
nington v. Howland, supra, as a correct statement of the
law, and further says (p. 651) :  "So in Fagen.v. Davi-
son, 2 Duer (N. Y.) 153, it was said: 'A title which is
required to be satisfactory to the party by whom it is to
be received, means a title to which there is no reasonable
objection, and with which the party ought to be satis-
fied.  Such a title he is bound to accept.'  And in Lord v.
Stephens, 1 Young & Collyer (Exch.) 222, the clause, in
question was: 'In case the title should not be satisfac-
tory to the said Richard Stephens these presents shall
be void to all intents and purposes,' and Lord ABINGER
held that the purchaser could make no other than the
usual objections."   This latter case in its facts re-
sembles closely the case at bar.  There was an agreement
of purchase and sale absolute on its fact, but containing
the provision (p. 223) "That in case the title should not
be satisfactory to the said Richard Stephens (Vendee)

his heirs, or assigns, or his or their counsel, these presents shall be void to all intents and purposes." The vendor filed a bill for specific performance, which was decreed. Counsel for defendant argued that "the agreement does not contain the usual stipulation that the plaintiff shall make a good title, but that in case the title shall not be satisfactory to the defendant, the agreement shall be void." To this counsel for the plaintiff replied (p. 227) : "As to the concluding passage in the contract, it clearly does not mean that the defendant should be at liberty to take an absurd or capricious objection to the title." Lord Chief Baron ABINGER said (p. 228) : "With respect to what has been said relative to the form of the contract, I cannot construe it to mean that the contract should be binding on one party and not on the other. I think it must mean that the contract should be at an end, in case there was a reasonable difficulty as to the title." Even in the case of a purchaser of a particular article warranted to be satisfactory to the purchaser, "to justify a refusal to accept.......on the ground that it is not satisfactory, the objection should be made in good faith. It must not be merely capricious": Singerly v. Thayer, 108 Pa. 291 (298). And in Guier v. Page, 4 S. & R. 1, it was held that (syllabus) "On a sale of approved endorsed paper, the construction of the law is, paper which ought to be approved." The conclusion to be drawn from these cases and fairly to be applied to the case at bar is, that the satisfactory title to which the plaintiffs were entitled, was one with which they ought to be satisfied. The agreement therefore went no further than to covenant for a good and marketable title. Under well settled law, such an agreement entitles the purchaser to specific performance on tender of the purchase money. Counsel for appellant argues with much force, that even if the agreement of December 11, 1909, be regarded as an option, which it was not, yet even from that standpoint it has been exercised according to its terms, and there-

fore in any event, plaintiffs are entitled to maintain their bill for specific performance. The plaintiffs had thirty days in which to examine the title and satisfy themselves as to its character. They were then required to prepare a deed "as soon thereafter as possible," and send it to the vendor for execution. These words "as soon as possible" ordinarily are to be construed, as was said in Home Ins. Co. v. Davis, 98 Pa. 280, to mean within a reasonable time. In Ben Franklin Fire Ins. Co. v. Flynn, 98 Pa. 627, it was held that a requirement that proofs of loss were to be made as soon as possible after the fire, meant that this was to be done within a reasonable time, and that thirty days was a reasonable time. In the present case the time allowed for examination of the title expired January 10, 1910, and the deed was prepared and was mailed to McCausland nine days later. This was certainly not an unreasonable delay. The court below was of the opinion that plaintiffs were bound to notify the vendor of their satisfaction with the title within a period of thirty days. The agreement however contains no such requirement. The only duty imposed upon the plaintiffs was to prepare and forward a deed as soon as possible, or within a reasonable time, after thirty days had expired. This duty they discharged. In the demurrer objection is made to the bill, that copies of the notes to have been given by the vendor were not attached to it. It does not appear from the bill whether or not these notes were executed nor is it material in so far as plaintiffs' right to specific performance is concerned. That the contract, if binding upon her grantors, may be enforced against the present defendant Anna W. Ogden, Trustee, is not seriously disputed. Without doubt, where a contract for the sale of land is made, and the property is afterwards conveyed to another, with notice to the other of the original contract, the alienee is liable for its performance at the suit of the purchaser. If the original contract is binding, it may be enforced, against any one in whom, with notice

of the conditions, the legal or beneficial interest in the property becomes vested.

The assignment of error is sustained. The decree of the court below dismissing the bill is overruled. The bill is reinstated and the record is remitted to the court below for further proceedings in accordance with this opinion.