## Petrosky v. Ferrari et al.

*Edward B. Doran,* for plaintiff.

*John S. Lightcap, Jr.,* and *Smith, Best & Horn,* for defendants.

*Andrew G. Uncapher,* for James Forney, Sr., and Jessie V. Forney.

PER CURIAM, December 18, 1947.—This case comes before the court on defendant's preliminary objections to plaintiff's bill. The bill is a petition for an injunction, the prayers being that Bruno Ferrari and John Slate, trading and doing business as the Latrobe Construction Company, be restrained from further mining or stripping coal on property of James Forney, Sr., and Jessie V. Forney, his wife, that an account be taken of the coal already mined or stripped and that the Latrobe Construction Company be enjoined from paying royalties to James Forney, Sr., and wife, and that the Latrobe Construction Company be directed to desist its operations on the Forney property and be directed to remove all equipment therefrom.

The bill is based upon an alleged agreement dated January 11, 1947, a copy of which is attached to and made a part of the bill and marked Exhibit B and is as follows:

"1-11-47 I agree to lease to Frank J. Petrosky, of Greensburg, Pa.—all stripping rights and coal on the Forney Farm, R. D. #2, Saltsburg, Pa. for the consideration of 25 cents per ton of all coal removed from said property. I further agree that said spoil banks need not be leveled off and there need not be any refill. Royalty to be paid by Cash semi-monthly. All rights of way through said property is granted in this lease agreement.

"(Signed)
"James Forney Sr.
"Mrs. Jessie V. Forney
"Frank J. Petrosky"

"Witness":

In reality this is not an agreement of lease but merely an agreement to lease and is not under seal of the parties. The clause contained therein ". . . I (we) further agree that said spoil banks need not be leveled off and there need not be any refill" is in violation of the Bituminous Coal Open Pit Mining Conservation

Act of May 31, 1945, P. L. 1198, 52 PS §1396.1 et seq. which provides for the preservation and improvement of land affected in furtherance of the mining of bituminous coal by the open pit method. Section 10 of the act, 52 PS §1396.10, provides that the operator—in this case plaintiff herein—shall place sufficient overburden in the open cut to cover the exposed face of the unmined coal and further provides that peaks and ridges of spoil banks shall be leveled and rounded off to such an extent that will permit the planting of trees, grass and shrubs, and rejected coal and combustive materials shall not be used on the high bank wall. It will be noted that in the so-called agreement above quoted the provisions of the Act of 1945, supra, have been dispensed with; but no authority for so doing has been cited and we know of none.

In Medoff v. Fisher et al., 257 Pa. 126, where a suit was brought by an architect to recover for professional services, it was made to appear that the building contemplated, which was to contain a motion picture theatre, would have been in violation of the Act of June 9, 1911, P. L. 746, regulating the construction, maintenance and inspection of buildings used for exhibition of motion pictures. On appeal to the Supreme Court, Mr. Justice Moschzisker, said (p. 129):

". . . All men are supposed to know the law, . . .; therefore, we must assume both the plaintiff and the defendants knew that the uses to which the latter contemplated putting the proposed structure were forbidden under a criminal penalty. . . . Of course, no contracts or engagements entered into under such circumstances will be enforced at law.

"The plaintiff showed this unlawful combination in making out his case, and, in fact, it would have been impossible for him to avoid doing so; hence, the law will leave him just where it finds him, and the court below should have so ruled."

In the instant case, plaintiff shows the unlawful combination, the total disregard of the Act of 1945, supra, in his pleadings and particularly in the alleged agreement, Exhibit B, above referred to.

The same principle of law was applied by the Supreme Court in the case of Walcofski v. Lehigh Valley Coal Company, 278 Pa. 84, where Mr. Justice Kephart says (p. 88):

"There can be no legal excuse for failure to obey an absolute statutory requirement. . . .

"We have consistently followed a public policy announced long ago by this court; it will not aid a man who grounds his cause on an immoral or illegal act.

". . . ' "Every contract made for, or about, any matter or thing which is prohibited and made unlawful by statute, is a void contract, though the statute itself doth not mention that it shall be so, but only inflicts a penalty on the defaulter." ' "

The mere fact that the violation of the statute is not declared to be a crime does not excuse the owners' failure to observe the provisions of the act.

The Act of May 31, 1945, supra, which definitely provides for bank filling and leveling of the spoil banks declares in section 1, 52 PS §1396.1, that the legislation is enacted as an "exercise of the police powers of the Commonwealth for the general welfare of the people of the Commonwealth." The police power of the Commonwealth would go for naught if one were free to contract in violation of it. "There can be no contract to perform an illegal act. Such a purported contract is void": Pepper v. Direnzo, 46 D. & C. 118, 119. The bill of complaint in the instant case seems to admit that the Latrobe Construction Company was an innocent purchaser for value from James Forney, Sr., and wife, paragraphs 6 and 7 of the bill stating that on or about March 17, 1947, defendants, Bruno Ferrari and John Slate, trading as the Latrobe Construction Company "negotiated with defendants James Forney, Sr.

and Jessie V. Forney, his wife, for the lease of the coal" on the above-mentioned Forney Farm, the negotiations being consummated by John Slate on the part of the two partners. At the conclusion of the negotiations, John Slate, in a conversation with Frank Petrosky, was informed of the existence of a written lease between defendants, James Forney, Sr., and Jessie V. Forney, his wife, and plaintiff, Frank Petrosky.

There is no allegation in the bill that plaintiff at any time ever took possession of the Forney land. The bill appears to negative any such inference for the reason that it is stated in paragraph 8 thereof that the Latrobe Construction Company entered upon the premises of defendants and "are now removing coal pursuant to their own latter agreement."

It could be admitted that the agreement of the Latrobe Construction Company bears a later date than the alleged agreement with plaintiff, but the bill admits that the Latrobe Construction Company knew nothing of plaintiff's agreement with James Forney, Sr., and wife, until after that partnership had contracted with the landowners and that pursuant to that contract Latrobe Construction Company took possession of the land and is engaged in removing the coal. Had plaintiff taken possession immediately after the execution and delivery of his alleged agreement apparently dated January 11, 1947, such possession would have been constructive notice to the Latrobe Construction Company of the agreement with Frank Petrosky, plaintiff herein, but notice of plaintiff's contract after the construction company had in fact contracted with the Forneys is of no avail to plaintiff now. There appears to be no record notice of plaintiff's alleged agreement, as Exhibit B, attached to plaintiff's bill and made part thereof, is not a recordable instrument and was not in fact recorded.

Being without record, constructive or actual notice, which appears to be admitted by the bill, and having

taken possession of the real estate pursuant to a subsequent agreement with the owners thereof, the Latrobe Construction Company was in all respects an innocent purchaser for value and that would seem to be the end of the case against it.

However plaintiff's alleged agreement of January 11, 1947, is in violation of the statute of frauds and, as intimated at the outset of this opinion, is merely executory; the language being "I agree to lease" not that "I have leased" or "I do hereby lease."

In addition the alleged contract lacks an adequate description, which is essential if we were asked to decree specific performance or to compel substantial performance of the contract in suit. The subject-matter of the agreement was an agreement to lease "all stripping rights and coal on the Forney Farm, R. D. #2, Saltsburg, Pa." There is no allegation that this was on the land owned by James Forney, Sr., and Jessie V. Forney, his wife, and we will take judicial notice of the fact that Saltsburg, Pa., is in Indiana County and not within the jurisdiction of this court.

The land, which plaintiff claims is described in this agreement, is a tract of land in Loyalhanna Township, Westmoreland County, Pa., but there is no description found in the contract, indicating where the land is or its boundaries. If it had stated that it was the Forney Farm in Loyalhanna Township, Westmoreland County, Pa., then upon allegation and proof that defendants, James Forney, Sr. and Jessie V. Forney, his wife, owned no other land than this particular tract, the court might have had something definite with which to deal. If there is any description with respect to location contained within the contract, it is to be found only in the employment of the words "R. D. #2, Saltsburg, Pa." which has no particular association with Westmoreland County or the jurisdiction of this court.

If plaintiff herein was of the opinion that the Latrobe Construction Company was not an innocent purchaser

for value, then his relief would have been a bill for specific performance of his alleged previous contract with the landowners.

In Dillinger v. Ogden, 244 Pa. 20, a case which went up from this county, Mr. Justice Potter said (p. 28) :

"Without doubt, where a contract for the sale of land is made, and the property is afterwards conveyed to another, with notice to the other of the original contract, the alienee is liable for its performance at the suit of the purchaser. If the original contract is binding, it may be enforced, against any one in whom, with notice of the conditions, the legal or beneficial interest in the property becomes vested."

To the same effect is Atlas Portland Cement Co. v. American Brick & Clay Company et al., 280 Pa. 449, where Mr. Justice Kephart said (p. 457) :

"If one makes a contract to sell real property, but conveys it to another than the original vendee, the original vendee can obtain specific performance from the one to whom the conveyance was made if such grantee took with knowledge of the contract: . . . But if the grantee was a bona fide purchaser for value without notice, the vendee can have no relief against him; . . ."

"As a basis for a decree of specific performance, it is essential that there be a definite present agreement in writing, every requisite element whereof is clearly and fully set forth therein": Gettemy et ux. v. Homestead Association of Westmoreland et al., 356 Pa. 475, 479. Since one of the preliminary objections to the bill is that plaintiff has an adequate remedy at law, and since we are of opinion that, under the circumstances of this case, even that remedy cannot be maintained, and since we are further of opinion that the other objections should be sustained, we are constrained to believe that all the preliminary objections to the bill should be sustained, the bill dismissed and not necessarily certified to the law side of the court as provided

in Equity Rule 49. We, therefore, enter the following decree:

And now, to wit, December 18, 1947, after argument and after due and careful consideration, it is ordered, adjudged and decreed that the preliminary objections filed to the bill of complaint be, and the same hereby are, sustained, and the bill of complaint be, and the same hereby is, dismissed at the cost of plaintiff.