## Peck et al. v. Kirkpatrick et al.

*Harry Goodfriend*, for plaintiffs.

*Brenner & Brenner*, for defendants.

SMITH, P. J., October 3, 1951.—This matter comes before the court on the preliminary objections of R. Robert Solomon and Isabelle R. Kirkpatrick to plaintiffs' bill in equity. It is apparent that the controversy arises as the result of the efforts of plaintiffs and defendant Solomon to secure legal title to premises 2819-31 West Fletcher Street, Philadelphia, now occupied by plaintiff under a lease from Forrest J. Kirkpatrick (now deceased), the husband of Isabelle R. Kirkpatrick, one of the defendants. The property is an open lot used by plaintiff as a waste paper and scrap metal business. Defendant Solomon is in the same business and the site seems to be a most desirable one for the junk business.

On October 27, 1947, Forrest J. Kirkpatrick, then owner of the premises, entered into a written lease with plaintiffs for the premises for a term of five years, beginning November 1, 1947, at a rental of $275 per month. At that time, the premises was encumbered with a mortgage in the sum of $7,000 created by Forrest Kirkpatrick, and the premises were also bound by the lien of certain judgments of record in the aggregate sum of $34,772.37. Subsequent to the date of the lease, additional judgments were entered against Forrest J. Kirkpatrick in the sum of $6,768.08, which also became liens against the premises.

In paragraph 29 of the written lease, there is the following provision:

"On and after one year and three months from the date hereof the Lessor, his grantee or assignee, shall have the privilege and be empowered to terminate the within lease upon ninety days' written notice to the

Lessees in the event only that said premises shall have been bona fide sold or under bona fide agreement of sale. Provided further, however, that any bona fide offer received by the Lessor, for the purchase of the leased premises shall first be submitted in writing to the Lessees for their acceptance or rejection, such acceptance to be demonstrated by the Lessees within a period of twenty days from the submission of the said offer to them and accepted in accordance with the tenor of said offer, and upon acceptance of said offer lessees shall then be privileged to buy said premises and the Lessor will sell said premises to the Lessees at said price and upon said terms and conditions. Provided further said premises shall not be sold for a period of six months from the date of this lease."

By deed dated May 4, 1949, Forrest J. Kirkpatrick conveyed the premises subject to the mortgage and judgment liens to his wife, Isabelle R. Kirkpatrick, one of the defendants. Plaintiffs have fully performed all the covenants of the lease and are not in default thereunder.

On November 9, 1950, defendant Isabelle R. Kirkpatrick notified plaintiffs in writing that she had entered into an agreement to sell the premises (without mentioning the name of the prospective vendee) for the sum of $19,500 and pursuant to the terms of paragraph 29 of the lease required plaintiffs to exercise their option under the terms. On November 20, 1950, and before the expiration of the period of 20 days within which plaintiff could exercise his option, defendant notified plaintiffs in writing that the deal was off because she learned:

"I cannot deliver a clear title to the purchaser because of the mortgage, the judgments, and the tax liens of record against the property."

Isaac Richman, attorney for plaintiffs, then communicated with Frank W. Carey, a real estate broker

and agent for defendant Isabelle R. Kirkpatrick on November 24, 1950, for the purpose of learning what could be done to obtain a conveyance of the premises to the plaintiffs. A plan was then arranged by Frank W. Carey under which he, acting for Isabelle R. Kirkpatrick, would arrange to purchase an assignment of the mortgage and to arrange to purchase and obtain the assignment of the judgments that were prior to and subsequent in lien to the lease, except those judgments held by the United States of America and the Pennsylvania Unemployment Compensation Fund to the end that having control of the same, a conveyance of the premises could be then made to plaintiffs free and clear of the mortgage and those judgments so assigned.

Frank W. Carey, as agent for Isabelle R. Kirkpatrick, obtained the assignment of the mortgage and an assignment of the judgments mentioned in plaintiff's bill in equity. Among those judgments was one held by defendant Isabelle R. Kirkpatrick, as plaintiff, in the sum of $2,136.22. Frank W. Carey on December 26, 1950, then caused the mortgage and judgments appearing as liens against the premises to be assigned to his sister, Helen M. Carey, who is also acting as agent for Isabelle R. Kirkpatrick. Helen M. Carey, as agent aforesaid, on April 13, 1951, without plaintiff's knowledge, assigned the first mortgage and the judgments appearing as liens against the premises to R. Robert Solomon, defendant, who had knowledge of the terms of the lease. On April 27, 1951, Solomon, as assignee of the mortgage, which was in default, made a demand upon plaintiffs to pay the rent for the demised premises to him. On May 2, 1951, Solomon, as plaintiff, filed a complaint in re mortgage foreclosure against defendant, Isabelle R. Kirkpatrick, claiming that the principal of the mortgage was due and payable on September 5, 1949, and

by the terms thereof, is due and payable. This cause of action was brought in the Court of Common Pleas No. 6 as of March term 1951, no. 4672. No answer thereto has been filed by Isabelle R. Kirkpatrick.

Plaintiffs' bill in equity filed on May 25, 1951, avers, inter alia, that sometime prior to April 27, 1951, Isabelle R. Kirkpatrick had entered into negotiations with Solomon to sell him the premises and that Solomon, having knowledge of the lease held by plaintiffs and the provisions of paragraph 29 of the lease giving plaintiffs an option to purchase, and to avoid the making of a formal written agreement of sale and having notice that plaintiffs would exercise the option to purchase the premises, said Isabelle R. Kirkpatrick and Solomon conceived of a plan and scheme to assign the mortgage and judgment liens to Solomon so that the latter under the guise of foreclosure or execution could expose the premises at judicial sale bound by the liens and judgments in their face amounts.

The bill further avers that in the complaint of foreclosure, filed by Solomon, it appears that a default interest on the balance of the principal of the mortgage is due from June 5, 1947, to May 2, 1951, at five percent, in the total sum of $1,192.05. Plaintiff avers that interest was not in default as alleged, but that same was paid and is inserted in the claim for the purpose of increasing the indebtedness thereon. Plaintiffs further aver and expect to prove that Solomon paid Isabelle R. Kirkpatrick the sum of $23,500 to acquire title to the mortgage and judgments as well as to cause the aforesaid liens of the United States and Pennsylvania Unemployment Compensation Fund to be discharged and satisfied and to cover all taxes and water rents assessed against the demised premises. Plaintiffs in their bill aver that they are ready and willing and offer and tender to Solomon all such

sums as he has expended in that behalf for assignment to plaintiffs of the mortgage and judgments as well as what has been expended for satisfaction of any other judgments, which offer was refused.

The prayers of the bill are as follows:

"I. That pending the hearing on this Bill the said Defendant, Isabelle R. Kirkpatrick, be specially and on final hearing be perpetually enjoined from mortgaging or encumbering the said property in any way, or from selling or conveying the same, or any part thereof, to any person other than the Plaintiffs.

"II. That the Defendant, Isabelle R. Kirkpatrick, be decreed to specifically perform said agreement, and by good and sufficient deed convey and assure said premises to the plaintiffs; and the Defendant, R. Robert Solomon, be decreed to assign and transfer to the Plaintiffs the said mortgage and judgments held by him and binding said premises.

"III. That pending the hearing on this Bill the said Defendant, R. Robert Solomon be specially and on final hearing be perpetually enjoined from selling, transferring or assigning the aforesaid mortgage and judgments respectively assigned and marked to his use, as set forth in the foregoing Bill.

"IV. That pending the hearing on this Bill the Defendant, R. Robert Solomon, be specially and on final hearing be perpetually enjoined from proceeding with the action in foreclosure brought in the Court of Common Pleas No. 6 of Philadelphia County, as of March Term 1951, No. 4672, and that all further proceedings thereon be enjoined and stayed.

"V. That pending the hearing on this Bill the defendant, R. Robert Solomon, be specially and on final hearing be perpetually enjoined from enforcing or instituting further proceedings to enforce the judgments mentioned in this Bill, and that all further proceedings thereon be stayed.

"VI. That the Defendant, R. Robert Solomon, be decreed to hold title to the said mortgage and the said judgments as trustee for the Plaintiffs, and that he be directed to assign, transfer and convey the same to the Plaintiffs by good and sufficient written instruments upon payment to him of such sum or sums as he may have expended in acquiring title to the same.

"VII. Such other or further relief as your Honorable Court may deem meet, or the circumstances of the case require.

"VIII. General relief."

Defendants have filed preliminary objections to the bill as follows: There is an adequate and full remedy at law; that from the face of the bill the option upon which complainants allege their equity rests, at no time prior to the filing of the bill of complaint became operative in that the precedent conditions essential to its operation are not disclosed from the face of the bill to have ever come into being; because it affirmatively appears from the face of the bill of complaint that the grievances complained of as alleged therein, directly negative the alleged equities of complainants in the premises; that it affirmatively appears from the face of the bill of complaint that the alleged option claimed to vest in complainants, in its operative effect, rests upon facts not shown to have existed or arisen prior to the filing of the bill; because it affirmatively appears from the bill of complaint that the complainants offer to do equity is insufficient and inadequate in failing to tender to the objecting defendant the full amount of the encumbrances owned by him, together with any and all interest and costs arising or accruing therefrom or thereon; because it appears affirmatively on the face of the bill of complaint that the claimed equity subsisting in complainants as set forth therein, is subordinate and subject to, individually and col-

lectively, the encumbrances owned by objecting defendant, and the rights and remedies connected therewith and inseparable therefrom; because the bill of complaint is vague, indefinite, ambiguous, contradictory, etc.

We do not believe that plaintiffs have a full and adequate remedy at law. There is a parcel of land here involved and where the question of specific performance of a written agreement is involved, the court of equity will take jurisdiction: Dillinger v. Ogden, 244 Pa. 20. In cases where a third party purchases land with knowledge that an option to buy is in plaintiff, specific performance exists against him: Kerr v. Day, 14 Pa. 112. In Corson v. Mulvany, 49 Pa. 88, 100, Justice Agnew said:

"In Kerr v. Day, 2 Harris 112, the agreement was a lease for three years at a certain rent, with the privilege of buying the lot at any time during the term, at the price of $1,200, in such payments as might be agreed on, not exceeding ten years from the date. The title passed into Day, a purchaser from the lessors, and the lease into the hands of a second assignee of the tenant. The first assignee gave notice of his election to Day, the purchaser. The opinion of this court was delivered by Bell, J., holding that the title vested upon notice of the election in equity, and operated as a conversion of the lessor's estate into personalty, that the election by the assignee was good against the alienee of the lessors, and he became liable to specific performance, and, moreover, was bound to take notice of the right of election contained in the lease."

In this case the proposition of acquiring the mortgage and the judgment liens so that plaintiffs might acquire title to the land originated in the mind of the attorney for plaintiff and was communicated to the real estate agent for defendant Isabelle R. Kirkpatrick.

On her behalf this labor was performed and the assignments procured. Carey was not an agent or employe of the other defendant Solomon. The assignments were then placed in the name of the sister of Carey who also acted as agent for defendant Kirkpatrick. For what purpose was this done? Now that defendant Kirkpatrick held the title to the realty and controlled the encumbrances against it, she was in the position to sell the realty at the real estate price plus her expenses in acquiring the mortgage and judgment liens. Did she then make an offer to sell to plaintiffs who wanted, of which she was aware, to buy this plot of ground on which it was conducting its business? Did she offer it to anyone else for sale in which event plaintiffs had the option to buy at the price offered? She did not. To avoid this contingency, she sold the assigned incumbrances to Solomon at a price grossly inadequate for the land and incumbrances. The sum of $23,500 was not more than one half the face value of the mortgage and judgment liens without any consideration given for the land itself. What did she get out of it? Her dealing with Solomon shows a devious connivance with him to avoid what would have been her legal duty. Solomon in turn with knowledge of the lease conspired with her to defeat the right of plaintiffs to his own personal benefit and advantage. We do not believe that the court of equity should lend itself to this trickery and deceit amounting to a fraud upon plaintiffs. Fraud is difficult to define. Fraud in equity has been stated as follows:

"All acts, omissions, and concealments which involve a legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. This of course includes anything which would come under the definition of fraud at law, but it also

goes somewhat further, as many acts, transactions or circumstances are considered fraudulent in equity which would not necessarily be so regarded at law": 10 R. C. L. 321. There is no doubt that the acts of defendants were done with intent to deprive plaintiffs of their rights: Luttrell v. State, 85 Tenn. 232. From the particular circumstances of this case defendant Kirkpatrick was under a duty to communicate to plaintiff her dealings with Solomon.

In Bennett et al. v. McMillin et al., 179 Pa. 146, 153, Mr. Justice Dean held:

"The principle controlling such cases, and deducible from all the authorities, is well stated by Perry on Trusts, vol. 1, p. 179:

" 'There are cases where a party must not be silent upon a material fact within his knowledge, although he stands in no relation of trust and confidence. . . . If a party knows that another is relying upon his judgment and knowledge in contracting with him, although no confidential relation exists, and he does not state material facts within his knowledge, the contract will be avoided; for knowingly to permit another to act as though the action was confidential, and yet not state material facts, is fraudulent. It is said that a party in such circumstances is bound to destroy the confidence reposed in him, or to state all the facts that such confidence demands.' "

See also Stonemets v. Head, 248 Mo. 243, 263.

Plaintiffs, when they advised the agent of Kirkpatrick to look into the possibility of procuring the purchase of the mortgage and the judgments against this parcel of land had the right to believe that if these liens were so acquired, they would be advised of this fact before they were disposed of to a third party to their detriment and disadvantage.

The actions of defendants make manifest the scheme or plan to deprive plaintiffs of their right to purchase the land. Having set in motion the plan to acquire the liens and incumbrances, it is clear that only one object was in view, to wit, to enable Solomon to foreclose the mortgage and become the purchaser of the realty at judicial sale. Plaintiffs, if they were inclined to bid at the sale, would have been prohibited by the amount of the face value of all the incumbrances in the sum of nearly $50,000, which clearly is grossly excessive of the reasonable value of the land. In 11 Am. Jur. 582, §50, it is stated: "Generally speaking a combination for the purpose of causing a breach of contract is an unlawful conspiracy." See also cases in 84 A. L. R. 98. In the case at bar it required the concerted efforts of both defendants to effectuate this fraud upon the rights of plaintiffs. Plaintiffs have made out a prima facie cause of action against both defendants, who were guilty of the malicious acts.

The courts have held on many occasions that maliciousness does not necessarily mean actual malice or ill will, but the intentional doing of a wrongful act without legal or social justification: Raymond v. Pure Oil Co., 159 Pa. Superior Ct. 217; Klauder v. Cregar et al., 327 Pa. 1, 317; Caskie v. Philadelphia Rapid Transit Company, 321 Pa. 157. We believe that in a case of this description all of the facts should be disclosed before a court sitting in equity.

*Order*

And now, to wit, October 3, 1951, the preliminary objections filed by defendants are discharged and defendants and each of them are given leave to file answers on the merits within 20 days.